In the Matter of the Application of EDWARD FREEL, Respondent, for a Writ of Mandamus.— GEORGE W. PALMER, as Comptroller of the City of Brooklyn, Appellant.

CITY OF BROOKLYN — PAYMENT OF CLAIMS — DUTY OF COMPTROLLER.
It is not the intention of the provision of the charter of the city of Brooklyn (Chap. 583, Laws of 1888, tit. 5, § 2) requiring the comptroller to approve claims against the city, to give him any judicial power in regard to a claim where, by the terms of a valid contract under which it arose, the action of the city's engineer and commissioner of works is made final and conclusive ; and when such action has been had and has not been attacked by the city or fraud charged, the duty of the comptroller in approving the claim accordingly and issuing a warrant for its payment is merely ministerial and its performance will be compelled by peremptory mandamus.

Reported below, 89 Hun, 79.

(Argued January 6, 1896 ; decided January 14, 1896.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made July 26, 1895, which affirmed an order of Special Term directing the issuance of a writ of peremptory mandamus.

The facts, so far as material, are stated in the opinion.

*Albert G. McDonald* for appellant.   The duty placed upon the comptroller, the performance of which is sought to be compelled in this matter, is in its nature judicial and requires the exercise of judgment and discretion.   The court, therefore, had no power to direct the appellant to approve the claims in question. (*People ex rel.* v. *Common Council*, 78 N. Y. 33 ; Merrill on Mandamus, § 32 ; *Judges, etc.,* v. *People,* 18 Wend. 92, 99 ; *Howland* v. *Eldredge,* 43 N. Y. 457 ; Laws of 1888, chap. 583 ; Laws of 1890, chap. 31 ; Laws of 1894, chap. 568.)   Mandamus does not lie to compel the payment of debts, unless the officer proceeded against has only a ministerial duty to perform. (Merrill on Mandamus, §§ 17, 18 ; *People ex rel.* v. *Wood,* 35 Barb. 653 ; *People* v. *Board of Education,* 60 Hun, 486 ; *People ex rel.* v. *Camp-*

*bell,* 72 N. Y. 496; *People ex rel.* v. *Hawkins,* 46 N. Y. 9, 11; *People ex rel.* v. *Board of Apportionment,* 64 N. Y. 627; *People* v. *Supervisors,* 11 N. Y. 563; *F. N. Bank* v. *Wheeler,* 72 N. Y. 201.) Assuming that the case is one in which mandamus will lie, a peremptory writ should not have been granted. (*People ex rel.* v. *Wendell,* 71 N. Y. 171; *People ex rel.* v. *Supervisors,* 64 N. Y. 600; Code Civ. Pro. § 2070; *People* v. *Bd. of Police,* 107 N. Y. 239; *People ex rel.* v. *Bd. of Apportionment,* 64 N. Y. 627; *People ex rel.* v. *Bd. Suprs.,* 5 Wkly. Dig. 538; *Jones* v. *Wick,* 10 Misc. Rep. 112; *Marine Nat. Bank* v. *Nat. City Bank,* 59 N. Y. 67.) .

*Benjamin F. Tracy* for respondent. The present contract being a contract for materials to be furnished and labor to be done under the direction of the engineer of city works, and to be paid for upon his certificates, with the approval of the commissioner of city works, the comptroller, as a ministerial officer of the city, cannot withhold payment of accounts so certified and approved when duly audited. (*People ex rel. Ready* v. *Mayor, etc., of Syracuse,* 144 N. Y. 63; *People ex rel.* v. *Flagg,* 16 Barb. 503; *People ex rel.* v. *Flagg,* 17 N. Y. 588; *People* v. *Earle,* 16 Abb. Pr. [N. S.] 64; *People* v. *Earle,* 47 How. Pr. 368; *People* v. *Haws,* 12 Abb. Pr. 192; *People* v. *Lawrence,* 6 Hill, 244; *People* v. *Havemeyer,* 47 How. Pr. 59; *People* v. *Suprs.,* 20 N. Y. 473; *People* v. *Suprs.,* 45 N. Y. 196; *People* v. *Suprs.,* 51 N. Y. 401; *People* v. *Suprs.,* 134 N. Y. 1; Laws of 1888, chap. 583; *Brady* v. *Mayor, etc.,* 132 N. Y. 428.) The affidavits presented in opposition to the application state no facts which constitute a denial of the petitioner's claim. (Merrill on Mandamus, § 274; Fiero on Spec. Pro. 73, 74; Spelling on Ext. Relief, §§ 60, 64; *People ex rel.* v. *Common Council,* 77 N. Y. 511; *In re Sullivan,* 55 Hun, 288; *In re Martin,* 62 Hun, 557; *People ex rel.* v. *Suprs.,* 25 N. Y. S. R. 737; *People* v. *Norton,* 12 Abb. Pr. [N. S.] 87; *Kelsey* v. *P. Co.,* 3 N.Y.Supp. 723; Laws of 1894, chap. 595.) The alleged claims of the city against the petitioner do not affect his right to the payment of the approved

vouchers or to the relief herein demanded. (*People* v. *Stephens*, 71 N. Y. 550.)

MARTIN, J.  This is an appeal by the comptroller of the city of Brooklyn from an order made by the General Term of the second department affirming an order of the Special Term, which directed that a peremptory mandamus issue requiring the comptroller to approve of the relator's claim and to make and sign a warrant for its payment.

On the 16th of December, 1889, an agreement was entered into between the city of Brooklyn and the relator by the provisions of which the latter was to furnish certain specified materials and perform certain designated labor, for which he was to receive the compensation provided for in the agreement.  A reading of the entire contract between the parties renders it obvious that the contract was, not that the relator should complete any particular structure as such, but that he should furnish certain materials and perform certain labor in connection with the construction of the extension of the aqueduct and water works of the city of Brooklyn, for which he was to be paid an agreed price per foot, yard, thousand or ton, as the case might be.  The work was to be performed and the materials furnished under the direction and control of the defendant's engineer and commissioner of city works.  Whether, when completed, the structure would answer the purpose for which it was intended was no part of the contract on the part of the relator.  If he furnished the materials and performed the labor specified in accordance with the terms of the contract, it was a compliance with it upon his part.

The contract between the parties contained a provision that if any faults or defects became apparent within the period of six months from the completion of the work, requiring repair, the contractor should make such repairs, or, in case of his omission to do so, they were to be made at the expense of the contractor and the amount deducted from a portion of the contract price which was retained for that

purpose. It is to be observed that this test does not relate to
the sufficiency of the reservoir, but only to faults or defects
in the work and materials performed and furnished by
the contractor. Nor did the acceptance of the work or the
payment of the remainder of the contract price depend upon
or await the result of the test, as the contract clearly provided
that the repairs, if any were required, should, if not made by
the relator, be paid for from the eight per cent retained by
the city. The contract also contained the following pro-
vision : " To prevent all disputes and litigation, it is further
agreed by and between the parties to this contract that the
engineer shall in all cases determine the amount or the quan-
tity of the several kinds of work which are to be paid for
under this contract, and he shall determine all questions in
relation to said work and the construction thereof, and he
shall in all cases decide every question which may arise rela-
tive to the execution of this contract on the part of the said
contractor, and his estimate and decision shall be final and
conclusive upon said contractor ; and such estimate and
decision, in case any question shall arise, shall be a condition
precedent to the right of the party of the second part to
receive any money under this agreement." It likewise pro-
vided that the engineer should, once a month, make estimates
of the amount of work done and materials furnished, and of
the value thereof, according to the terms of the agreement ;
that upon those estimates the city would pay the relator
eighty per cent of the estimated value, and that " whenever,
in the opinion of the engineer, the party of the second part
shall have completely performed this contract on his part, the
said engineer shall certify, in writing, to the commissioner of
city works, and in his certificate shall state, from actual
measurements, the whole amount of work done by the said
party of the second part, and also the value of such work
under and according to the terms of this contract. And on
the expiration of thirty days after the acceptance by said com-
missioner of city works of the work herein agreed to be done
by the party of the second part, the said party of the first part

will pay to the said party of the second part, in cash, the amount remaining after deducting from the amount or value contained and stated in the last-mentioned certificate, all such sums as shall theretofore have been paid to the said party of the second part under any of the provisions of this contract contained, and deducting the eight per cent reserve provided in clause T and all such sum or sums of money as by the terms hereof they are or may be authorized to retain or reserve."

That this agreement was made, and that the city of Brooklyn was bound by it, is not denied. It may, therefore, be assumed that the contract was authorized and binding between the parties, and that their rights are controlled by and dependent upon its provisions.

During the progress of the work under the contract thirty monthly estimates were made by the engineer, approved by the commissioner of city works, audited by the city auditor, warrants were signed by the comptroller for the payment of the several amounts called for by such estimates, and they were paid by the disbursing officer of the city. The thirty-first estimate was made by the engineer, approved by the commissioner, and certified and allowed by the auditor. Subsequently the thirty-second and final estimate was made, approved and audited in the same manner. The amount of these two estimates has not been paid, as the comptroller has refused to allow or approve these claims or issue warrants for their payment, although the work had been accepted by the commissioner of city works.

The charter of the city of Brooklyn provides that all moneys drawn from the treasury shall be upon vouchers for the expenditure thereof, examined and allowed by the auditor, and also approved by the comptroller, in whose office all such vouchers shall be filed. (Chap. 583, Laws of 1888, tit. 5, sec. 2.) Section 1 of title 6 of that act provides that no money shall be drawn from the treasury except in pursuance of an appropriation by the common council, or under the provisions of existing laws, and upon warrants signed by the mayor and the comptroller and countersigned by the city clerk.

22

The first question presented, and with our views of the case the only one that need be determined, is whether the comptroller in approving such claims and issuing warrants for their payment acts judicially or only ministerially. When we consider the provisions of the contract under which the materials and labor were furnished, which declares that the certificate of the engineer, approved by the commissioner of city works, shall be conclusive upon the contractor, and that the express purpose of this provision was to prevent all disputes and litigation between the parties, it is quite manifest that the certificate of the engineer is to be regarded as conclusive between the parties. Assuming such to be the effect of the certificate, it becomes obvious that the comptroller's duties in approving and issuing a warrant for the payment of such a claim were merely ministerial. We think it was not the intention of the statute requiring the comptroller to approve of claims against the city to give him any judicial power in regard to a claim where, by the agreement under which it arose, the action of the engineer and commissioner was to be final and conclusive. There may be cases where the comptroller would be authorized to act otherwise than ministerially as to claims presented to him for his approval, but in a case like this, where, by the terms of a valid contract between the parties, the action of the engineer and commissioner is made conclusive, we think the comptroller has only a ministerial duty to perform in the approval of the claim.

If fraud on the part of the contractor or officers of the city had been established, it may well be that it would invalidate the action of the engineer and commissioner, so that a certificate given would be invalid. But such is not this case. The contention of the respondent, that the engineer and commissioner improperly allowed the relater for clay used by him which belonged to the city, does not seem to be sustained. The undisputed proof is that a general custom prevailed in the city of Brooklyn, by which clay or other materials excavated by a contractor belonged to him. This clay having been excavated by the relator, used upon the work with the

knowledge of the engineer and commissioner, its quantity and value placed in the estimates and certified as correct by those officers, the presumption is that it was properly allowed, and we find no proof to the contrary.

In the case of *People ex rel. Ready* v. *Mayor* (144 N. Y. 63), which was somewhat similar to the case at bar, this court held that, as the city had not charged that the action of its officers was fraudulent or attacked it in any way, the municipal officers of the city could not attack the certificate of the engineer or his return to the common council, by showing that the return was made under a mistaken idea of the facts, or that the certificate of the engineer was false or incorrect, and that as the officers acted only ministerially the relator was entitled to a peremptory mandamus.

We think the principle of that decision is controlling in this case, and that the order of the General Term should be affirmed, with costs.

All concur, except Vann, J., not sitting.

Order affirmed.