THOMAS COLON et al., Respondents, *v.* JOHN W. LISK et al., Appellants.

1. PROTECTION OF OYSTERS — FORFEITURE OF DISTURBING VESSEL — UNCONSTITUTIONALITY OF L. 1896, CH. 383. Chapter 383, Laws of 1896, which provides for the summary seizure of any boat or vessel used by one person in interfering with oysters or other shell fish belonging to another, and for its forfeiture and sale, and the payment of the avails to the commissioners of fisheries, game and forest, by an exclusive procedure before a justice of the peace, with no provision for a jury trial, is in violation of the constitutional provisions that "trial by jury in all cases in which it has been heretofore used shall remain inviolate forever," and that no person shall be deprived of "life, liberty or property without due process of law." (N. Y. Const. art. 1, §§ 2, 6; U. S. Const. 14th amdt.)

2. POLICE POWER. The act (L. 1896, ch. 383) involves the unauthorized confiscation of private property for the mere protection of private rights, and is not within the police power of the state.

*Colon* v. *Lisk*, 13 App. Div. 195, affirmed.

(Argued May 3, 1897; decided June 8, 1897.)

APPEAL, by certification, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 26, 1897, and from an interlocutory judgment entered upon the decision of that court reversing an interlocutory judgment entered upon the decision of a Special Term, and sustaining the plaintiffs' demurrer to so much of the answer as set up chapter 383 of the Laws of 1896 as a defense herein.

The appeal was taken by leave of the Appellate Division, which certified the following questions of law for review:

"*First*, whether the affirmative defense alleged in the defendants' second defense to the complaint constitutes a defense to plaintiffs' cause of action ; and,

"*Second*, whether chapter 383 of the Laws of 1896, which amends section 189 of chapter 974 of the Laws of 1895, is in violation of the Constitution of the state of New York."

The action was replevin. The plaintiffs are in possession of the sloop " Jessie," her furniture and apparel, under a writ issued in this action. They claim to be the owners of the property in question, and entitled to the possession thereof by virtue of their ownership. In the complaint their title and right of possession of the property are alleged, and that the defendants wrongfully took possession thereof. The defendants by their answer admit the plaintiffs' title, but deny that they are entitled to the possession of it. They then admit the taking, but deny that it was wrongful or unlawful. As a further and separate defense, they allege that they were, at the time, fish and game protectors and foresters, and that they were charged by the laws of the state with the enforcement of the Fish and Game Law. They then allege, upon information and belief, that on the ninth day of July, 1896, the sloop " Jessie " was used in violation of subdivision 1 of section 189 of the Fisheries, Game and Forest Law, as amended by chapter 383 of the Laws of 1896, in that it was used in destroying the oysters of Peter Poleworth, lawfully planted in the waters of Prince's bay in the state of New York, and that, acting in their official capacity as officers of the law, on the fourteenth of July, 1896, they seized the sloop with her tackle, apparel and furniture, in accordance with the provisions of such statute. To this portion of the defendants' answer the plaintiffs demurred, upon the ground that it was insufficient in law upon the face thereof, and that it did not state facts sufficient to constitute a defense to the cause of action set up in the complaint.

Subdivision one of this statute, so far as material to the question under consideration, is as follows: 1. "No person shall in any wise interfere with, take, disturb or carry away

the oysters of another lawfully planted or cultivated in any of the waters of the state, or remove any stakes or buoys or any boundary marks of any planted or cultivated beds. * * * Whoever shall violate or attempt to violate the provisions of this subdivision shall be guilty of a misdemeanor and, in addition thereto, shall be liable to a penalty of one hundred dollars for each violation thereof. 2. All sheriffs, deputy sheriffs and constables shall, and any other person may, seize any boat or vessel used by any person or persons in violation of subdivision one of this section, together with the tackle, apparel and furniture of said boat or vessel wherever found, within one year after such violation, and shall forthwith give notice thereof to any justice of the peace of the county where the seizure was made." Subdivision three declares that the justice, to whom the notice is given, shall forthwith fix a time and place for trial, and give at least six days' notice of the same to the person or persons in possession of the boat at the time of such seizure, and also to the owner, if known and a resident of the county within which the seizure was made. If the persons entitled to such notice are unknown or not residents of the county, then notice is to be published once a week for two weeks in a newspaper published in the county, describing the boat, stating the grounds of seizure, and the time and place fixed for trial. Subdivision four provides that, at the time fixed, or at any time to which it may be adjourned, the justice of the peace shall determine by the evidence taken by him whether the boat was used in interfering with oysters or other shell fish in violation of the provisions of subdivision one, and if he shall determine that it was so used, he shall order the same, with its furniture, tackle and apparel, to be sold, direct the manner of sale, and from the avails of the sale deduct the amount of charges and expenses, and pay the remainder to the commissioners of fisheries, game and forest.

*Elmer G. Sammis* for appellants. Forfeiture of the instrument of the offense against a statute is within established principles of legislation. (*Smith* v. *State of Maryland,* 18

How. [U. S.] 71.)   The statute in question does not conflict
with the admiralty jurisdiction of the United States or any
law of Congress, and is a proper subject of legislation by the
state.   (*U. S.* v. *Bevans*, 3 Wheat. 386; *Smith* v. *State of
Maryland*, 18 How. [U. S.] 371.)   The procedure provided
for by the statute constitutes due process of law.   (2 Kent's
Comm. 13; *Wynehamer* v. *People*, 13 N. Y. 378; *People ex
rel.* v. *Supervisiors*, 70 N. Y. 228; *In re U. El. R. R. Co.*
112 N. Y. 75; *In re E. C. Bank*, 18 N. Y. 215; *Happy* v.
*Mosher*, 48 N. Y. 313; *Campbell* v. *Evans*, 45 N. Y. 356;
*Hurtado* v. *California*, 110 U. S. 516.)   The statute in ques-
tion does not fall within the class of cases wherein a trial by
jury has heretofore been used.   (Bishop on Crim. Law, § 835;
*U. S.* v. *Three Tons of Coal*, 6 Biss. 379; *Anon Case*, 1 Gall.
23; *U. S.* v. *La Vengeance*, 3 Dall. 279; *Confiscation Cases*,
20 Wall. 92, 110; *The Palmyra*, 12 Wheat. 1; *State* v. *Bar-
rels of Liquor*, 47 N. H. 369; *State* v. *Tufts*, 56 N. H. 137;
*Our House No. 2* v. *State*, 4 Greene [Ia.], 172; Brown on
Jurisdiction, 170, §§ 60, 62; *Haney* v. *Compton*, 7 Vroom,
507.)   The fact that an innocent owner may suffer does not
render the statute unconstitutional.   (*U. S.* v. *Brig Mudek-
adhel*, 2 How. [U. S.] 233; *Dobbins* v. *U. S.*, 6 Otto, 395;
*U. S.* v. *Little Charles*, 1 Brock, 347; *Bertholf* v. *O'Reilly*,
74 N. Y. 525; *Boggs* v. *Comm.*, 76 Va. 989.)   Seizure with-
out process is not a tenable ground of objection.   (*Cook* v.
*Gregg*, 46 N. Y. 439; *Haney* v. *Compton*, 7 Vroom, 507;
*Corfield* v. *Coryell*, 4 Wash. C. C. 371; *Smith* v. *State of Mary-
land*, 18 How. [U. S.] 371.)   Every presumption is in favor of
the constitutionality of acts of the legislature.   (*G. E. R. Co.*
v. *Anderson*, 3 Abb. [N. C.] 434; *G. E. R. Co.* v. *Kobbe*,
70 N. Y. 361; *People ex rel.* v. *Bd. Suprs.*, 147 N. Y.
1; *People ex rel. Kemmler* v. *Durston*, 119 N. Y. 569;
*Reilly* v. *Gray*, 77 Hun, 402; *Bertholf* v. *O'Reilly*, 74
N. Y. 509.)

*Benjamin Patterson* for respondents.   This act is uncon-
stitutional in that it attempts to confiscate and does direct the

confiscation of property, the ownership of which is virtuous, as a punishment for a crime, irrespective of the guilt or innocence of the owner. (Const. N. Y. art. 3, § 1; *Lawton* v. *Steele*, 119 N. Y. 226.) This statute contemplates the confiscation of property as a punishment for a crime, without due process of law, in violation of section 6 of article 1 of the State Constitution. (*People* v. *Havnor*, 149 N. Y. 195; *Wynehamer* v. *People*, 13 N. Y. 378; *People ex rel.* v. *Bd. of Suprs.*, 70 N. Y. 234; *Rockwell* v. *Nearing*, 35 N. Y. 302; *Westervelt* v. *Gregg*, 12 N. Y. 212.)

MARTIN, J. The correctness of the judgment of the court below is dependent upon the power of the legislature to enact the statute under which the defendants seek to justify their seizure of the property in question. It is practically conceded that if the statute is valid, it justified the acts of the defendants and the allegations of their answer are sufficient to constitute a defense. The validity of this statute is challenged, and the general question arises whether it falls within the inhibition of any of the provisions of either the Federal or State Constitution. The constitutional limitations applicable to this question are contained in the provisions of the Constitution of this state which declare that, "Trial by jury in all cases in which it has been heretofore used shall remain inviolate forever," and the provisions of the Federal and State Constitutions which provide that no person shall be deprived of life, liberty or property without due process of law. (N. Y. Const. art. 1, §§ 2, 6; U. S. Const. 14th amendment.)

The statute under consideration makes any interference by one person with oysters or other shell fish belonging to another a misdemeanor, and adds to the ordinary punishment for such an offense a further penalty of one hundred dollars for each violation thereof. It then provides that certain officers named shall, and any other person may, summarily, without process or other authority, seize any boat or vessel used in violation of the act, and that upon a six days' notice to the person in possession and to the owner, if known, a justice of the

peace shall proceed to take evidence whether the vessel was used in violation of the statute, and if he shall determine it was, he must order the same to be sold, and the avails, after deducting the charges and expenses, must be paid to the commissioners of fisheries, game and forest. No provision for a trial by jury is found in any portion of the act, nor is such a trial permissible under it.

The learned Appellate Division held that this statute was in contravention of the constitutional provision which insures a trial by jury in all cases in which it has been heretofore used, and upon that ground alone reversed the decision of the Special Term and sustained the plaintiffs' demurrer to the answer. This question was so ably discussed by the learned justice who delivered the opinion of that court that we should deem it wholly unnecessary to do more than concur in the conclusion reached, and upon the grounds so well and ably stated, except for the fact that we cannot agree with the conclusion that the statute is not in conflict with other constitutional provisions. Therefore, while we agree in the result, yet we think the statute violative of other constitutional limitations which render it invalid.

In considering this case, we deem any extended discussion of the question of the invalidity of the statute, because it deprived persons affected by it of the right to a trial by jury, unnecessary, in view of its exhaustive and satisfactory examination by the court below. Section two of article one of the Constitution, which insures a trial by jury in all cases in which it has heretofore been used, was under consideration by this court in the case of *Wynehamer* v. *People* (13 N. Y. 378, 426). It was there said that that provision does not limit the right to mere instances in which it has been used, but extends it to such new and like cases as may afterwards arise. That principle was also recognized in *People ex rel. Comaford* v. *Dutcher* (83 N. Y. 240, 242). The doctrine that the jury trial referred to in that provision means a trial by a common-law jury of twelve men, was also asserted in the latter case, and *Hill* v. *People* (20 N. Y. 363) and the *Wynehamer* case

25

were referred to as sustaining it. Therefore, if the right to a trial by jury existed in similar cases at the time of the adoption of the Constitution, then clearly this statute was invalid, for the reason that it in no way provided for such a trial, either in the trial court or upon appeal. That the forfeiture of property used in violation of this statute is in effect a penalty we have no doubt. We regard it equally clear that suits to enforce forfeitures or penalties have been generally tried by a jury. Consequently, as the statute under consideration makes no provision for such a trial, but provides another exclusive method, it is in conflict with the provisions of section two of article one of the Constitution of the state. ( *Wood* v. *City of Brooklyn,* 14 Barb. 425, 432 ; *Warren* v. *People,* 3 Parker, 544.)

We are, however, of the opinion that there is another and broader ground upon which this statute should be declared invalid. In discussing the constitutionality of this act, it is to be remembered that the question is to be determined not by what has been done under it in any particular instance, but by what may be done under and by virtue of its authority. ( *Stuart* v. *Palmer,* 74 N. Y. 183 ; *Gilman* v. *Tucker,* 128 N. Y. 190, 200.) When considered with that idea in view, it at once becomes obvious that this statute may be employed to confiscate to the state the entire property of an individual for the commission of a trespass upon the property of another, however slight, and this, too, although the owner is guiltless of any intended or actual wrong. If valid, we see no reason why the largest and most valuable vessel sailing on the waters of the state may not be sold under it, and the price arbitrarily transferred to the state, although the measure of any offense committed is but the disturbance or removal of a single buoy or stake, and that by some person for whose act neither the owner nor the person in possession is responsible, or could in any manner control. Moreover, the right of seizure continues for the period of one year. Hence, if this act is valid, it would seem that such a vessel may be seized, condemned, sold and its value transferred to

the state at any time within a year after a trespass is committed, although there may have been a change of title and the owner may have paid full value, with no knowledge or even suspicion that it is subject to seizure and confiscation. That the legislature has power, under existing constitutional limitations, to pass a law fraught with such consequences, we do not and cannot believe.

It is to be observed, in passing, that the *use* for which vessels and fixtures may be forfeited under this act does not constitute a nuisance, either at common law, or under this, or any other statute. Nor is the property itself a nuisance. Hence, it is obvious that the validity of this act cannot be maintained upon the ground that either the act or the property is a public nuisance, and, consequently, that the legislature had the power to authorize its abatement. Nor, indeed, is it clear that the legislature would have been authorized to declare the use of such a vessel for that purpose a public nuisance, as it could only do so in case it was detrimental to the public interest. While the legislature may in a proper case declare property or its use in a particular manner a nuisance, yet that power is not unlimited. It cannot be used as a cover for withdrawing property from the protection of the law, nor can the legislature, when no public right or interest is involved, arbitrarily declare property a public nuisance for the purpose of devoting it to destruction. (*Lawton* v. *Steele*, 119 N. Y. 226, 233.)

By virtue of what power can the legislature enact a statute forfeiting to the state the property of one person, upon the sole ground that he had in some manner interfered with the private rights of another, is an inquiry which at once presents itself. Such an act would seem to be in clear violation of the provisions of both the Federal and State Constitutions, which insure to every person his life, liberty and property, unless deprived of them through the regular and proper administration of the law according to the rules and forms which have been established for the protection of private rights or the punishment or prevention of public wrongs. The legislature is not vested with the power to arbitrarily provide that any

procedure it may choose to declare such shall be regarded as due process of law. If it possessed that power, the guarantees of the Constitution would be rendered unavailing, and private rights of citizens would be within its absolute control.

If authority to enact the statute under consideration existed, it was by virtue of the police power vested in the legislature. Under that power, persons and property may be subjected to necessary restraints and burdens to secure the general public good. That that power exists is undenied. That it is necessary to the proper maintenance of the government of the state and the general welfare of the community, must also be admitted. Although it includes everything essential to the safety, health, morals and general good of the public, it is by no means unlimited. " To justify the state in thus interposing its authority in behalf of the public it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference ; and, second, that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts." (*Lawton* v. *Steele*, 152 U. S. 133, 137.)

It is within the province of the legislature to determine what laws are needed for the protection of the public, and so long as its measures are calculated and appropriate to accomplish that end, its discretion may not be reviewed by the courts. They must, however, have some relation to that end, and if they do not really relate to such a purpose, it becomes the duty of the courts to declare them invalid. (*Matter of Jacobs*, 98 N. Y. 98.) It is for the judiciary to see that the purpose to be reached by the law is a public one. (*Matter of Ryers*, 72 N. Y. 1, 8.) Equal rights and impartial tribunals

to enforce them are the results which are intended to be secured by the establishment of constitutional limitations to legislative power. (*People* v. *Marx*, 99 N. Y. 377, 387.) Under the mere guise of a statute to protect against wrong, the legislature cannot arbitrarily strike down private rights and invade personal freedom, or confiscate private property. The police power must be exercised within its appropriate sphere, and by appropriate methods. (*People* v. *Arensberg*, 103 N. Y. 399.) This power can be exercised only to promote the public good, and is always subject to judicial scrutiny. (*Forster* v. *Scott*, 136 N. Y. 577, 584.) Whenever the legislature passes an act which transcends the limits of the police power, it is the duty of the judiciary to pronounce it invalid, and to nullify the legislative attempt to invade the citizens' rights. (*People ex rel. Nechamcus* v. *Warden*, 144 N. Y. 529, 535.) That power must be exercised subject to the provisions of both the Federal and State Constitutions. Laws passed in the exercise of it must tend towards the preservation of the lives, health, morals or welfare of the community, and the court must be enabled to see some clear and real connection between the assumed purpose of the law, and the actual provisions thereof, and that the latter tend in some plain and appreciable manner towards the accomplishment of the objects for which the legislature may use this power. (*Health Department* v. *Rector*, 145 N. Y. 32, 39.)

The question here to be determined is whether the enactment of the statute we are considering was a proper exercise of the police power. When we submit this statute to the test of the principles established by the cases already cited, to which many others might be added, it becomes obvious that it cannot be upheld upon the ground that it is within the police power of the state.

It is to be observed that the statute does not relate to the health, morals, safety or welfare of the public, but only to the private interests of a particular class of individuals. Nor can it be fairly said that the means provided for the protection of those interests are reasonably necessary to accomplish

that purpose. But, on the contrary, they are plainly oppressive and amount to an unauthorized confiscation of private property for the mere protection of private rights. It is in no manner attempted by this statute to protect any public interest, or defend any public right. Nor is it calculated to accomplish that end, but, under the guise of a pretended police regulation, it arbitrarily invades personal rights and private property.

In this case we have a statute which authorizes the seizure, sale and complete appropriation by the state of the property of an individual, which may reach in value many thousands of dollars. It is manifest that this extraordinary and extreme statute is not necessary and was not intended for the protection of the public. Its sole purpose was to regulate private interests and enforce private rights. In no sense can it be regarded as a police law, and, consequently, is not within the police power. In this statute we have another example of class legislation where the legislature has attempted to improperly interfere with the private rights of the citizen. This species of legislation has been so often condemned by this and other courts as to render any further discussion of its impropriety and invalidity wholly unnecessary. (*Matter of Jacobs*, 98 N. Y. 98; *People* v. *Marx*, 99 N. Y. 377; *People* v. *Arensberg*, 103 N. Y. 388; *People* v. *Gillson*, 109 N. Y. 389; *Forster* v. *Scott*, 136 N. Y. 577.) We are clearly of the opinion that the legislature had no authority to pass the statute under which the defendants attempted to justify their acts, and that it is in plain violation of the constitutional provisions to which we have already adverted. For these reasons, the statute must be held invalid, and the decision of the Appellate Division affirmed.

It follows that the questions certified to this court for its determination must be answered as follows: the first is answered in the negative and the second in the affirmative, and the judgment appealed from affirmed, with costs.

All concur.

Judgment affirmed.