(24 Misc. Rep. 554.)

WHITMAN et al. v. KLEIMANN et al.

(Supreme Court, Special Term, New York County.  September, 1898.)

1. REPLEVIN—DELIVERY OF PROPERTY—DUTY OF WAREHOUSEMEN.

Acts 1895, c. 633, providing that, in actions to determine the title and possession of goods on storage in warehouses, the warehousemen shall, after service of a notice setting forth plaintiff's claim, hold such goods subject to order of court, and deliver same to the person named in the judgment to be made by the court, but that no judgment shall be made except on satisfactory proof that the person named therein is entitled to possession of the property, applies only to ordinary actions of replevin and trover, and not to actions of claim and delivery, where the immediate possession of the property is claimed.

2. SAME—EX PARTE JUDGMENT FOR POSSESSION—RIGHTS OF THIRD PERSONS.

In replevin for goods stored in a warehouse, an ex parte order obtained by plaintiff, under Acts 1895, c. 633, directing the warehousemen to deliver the goods to the sheriff, cannot affect the right of a third person not a party to the action, and claiming to own them by purchase from the bailor previous to the commencement of the proceedings, and who received a warehouse receipt stating that the goods were held at his disposal.

Replevin by Nathaniel Whitman and others against Jacob N. Kleimann and others to recover possession of property stored in a warehouse. An ex parte order was made directing the warehousemen to deliver the property to the sheriff. One Einstein, not a party to the proceedings, claiming to be the owner of the property, moved to vacate the ex parte order. The motion was denied, on condition that plaintiff allow the movant to litigate his claim to the property, and furnish an undertaking to satisfy any judgment recovered by him in the proceedings.

M. Marks and E. Otterbourg, for the motion.
E. T. Goldberg, for plaintiffs.
William H. Gibson, for Linde Company.
L. M. White, for receiver of Linde Company.
B. S. Stone, for sheriff.

McADAM, J.  The plaintiffs undertook to replevin certain goods claimed to be owned by them, which had been stored by the defendants in the warehouse kept by the F. C. Linde Company.  Plaintiffs served upon the warehouse company the notice required by chapter 633 of the Laws of 1895, entitled "An act to regulate and determine the procedure in actions and proceedings relating to the title to or possession of goods, wares and merchandise on storage in warehouses."  The plaintiffs thereafter, and on August 19, 1898, obtained an ex parte order directing the warehouse company, upon payment of its lawful charges, to deliver to the sheriff the chattels "stored with them by the defendants."  The goods were thereupon delivered to the sheriff as the property of the defendants, and, after the justification of plaintiffs' sureties, the sheriff delivered the goods to the plaintiffs, pursuant to the requirement of section 1706 of the Code of Civil Procedure.  One Einstein, a third person not a party to the action, now moves to set aside the order directing the delivery to the sheriff, on the ground that the property delivered became his prior to the issuing of the writ, to wit, on March 10, 1898, by virtue of a transfer from the defendants Kleimann

and Yohn, as security for a loan of $5,000, on which transfer a ware-house certificate was issued to him on that day by the warehouse company, acknowledging that said company held the goods for Einstein's account, and that they were deliverable only to him or upon his indorsement and surrender of the receipt.   The act of 1895 (chapter 633) was intended to protect warehousemen from actions resulting from conflicting questions of title, respecting goods in their care, to which they made no claim other than for storage, by requiring the different claimants to establish their title by judicial proceedings in some form sufficient to protect the warehouseman, before requiring him to deliver up the property; the warehouseman thus favored being looked upon as an indifferent stakeholder, requiring legislative protection. This was the supposed mischief against which the previous law did not provide, and the defect the act in question was intended to remedy.

Assuming (but only for present purposes) that the act in its entirety is one affecting procedure without impairing the right of property, leaving the injured party a substantial remedy according to the course of justice, and for that reason free from constitutional objection, the next inquiry is whether the act extends beyond ordinary actions of replevin or trover, and reaches the provisional remedy given by the Code for immediate possession when that is invoked by the plaintiff. The Code (section 1700) requires that, if the chattel be found in possession of the defendant or his agent, the sheriff must forthwith replevin it "by taking it into his possession,"—a right the sheriff must enforce (Freem. Ex'ns, §§ 468, 473; Keith v. Johnson, 25 Am. Dec. 167; Howe v. Oyer, 50 Hun, 559, 3 N. Y. Supp. 726); leaving adverse claimants to seek protection under the Code provisions, which are ample for their protection.   When the sheriff replevies property, it passes into the custody of the law (Bank v. Blye, 123 N. Y. 132, 25 N. E. 208); and the sheriff must retain it in his possession until the person entitled to the possession thereof is ascertained, as prescribed by the Code, and then it must be delivered to that person (section 1702).   On the other hand, the act of 1895 contemplates an uninterrupted continuance of possession by the warehouseman, with an accumulation of charges, and perhaps a depreciation of value or loss of use, until the court is in a position to determine which claimant is entitled to the property.   The innovation intended by the act of 1895 was the protection of warehousemen; and if omitted as parties defendant, and their storage charges are paid, the purpose of the act would seem to be satisfied, without otherwise impairing the utility or harmony of the Code system of procedure, which for so many years has proved satisfactory to litigants.   If the warehouseman is not the agent of the defendants named in the writ, he may decline to respect the authority of the sheriff under it (Otis v. Williams, 70 N. Y. 208); so that, even under the Code provisions (if the warehouseman is omitted as a party defendant, as directed by the act of 1895), the warehouseman may require his principal to be brought into the litigation before the property can be taken from his custody.

Assuming, however, that the act of 1895 is constitutional, and applies,—the assumption on which the plaintiffs acted when they obtained the ex parte order directing the warehouse company to deliver

the property to the sheriff,—the order does not really prejudice Einstein, who was not a party to the action, and had no notice of it. As to him, the order is open to the objection that it tended to deprive him of his property without due process of law. Cooley, Const. Lim. (2d Ed.) 352; Colon v. Lisk, 153 N. Y. 188, 47 N. E. 302; Schrauth v. Bank, 86 N. Y. 390. Nor does the order in any manner protect the warehouse company, which must have known that the court could not, by ex parte order, determine a disputed question of ownership. It was the duty of that company to have notified Einstein of the order, that he might have protected himself from it; for the company knew that it had issued to him a warehouse receipt acknowledging his ownership of the property. The order, if attempted to be used to affect any property other than that of the defendants, was a nullity, and might safely have been so regarded. It did not direct the delivery over of Einstein's property, but goods stored by the defendants and called for by the writ of replevin, which were to be delivered to the sheriff in execution of the writ. The warehouse company delivered the property to the sheriff, as the property to which the sheriff was entitled; and, the plaintiffs' sureties having justified, the sheriff delivered the property to the plaintiffs, as required by section 1706 of the Code. The disputed question of title could be disposed of only after a judicial determination according to the course of the common law. The fact that Einstein claimed the goods, and had a warehouse receipt for them, though known to the plaintiffs, was not disclosed in the papers upon which the order was granted. The order was at first declined, and granted the next day, on the personal assurance of the plaintiffs' attorney that there was no substantial objection to delivery over of the property, the order being formal only to satisfy the requirements of the act of 1895. The suppression of the fact of Einstein's claim and the assurance of counsel amount to an imposition on the court, as, on the facts that now appear, the order would not have been made. Even if not binding on Einstein, if by means of the order his property has been taken, he must be protected. The plaintiffs' counsel, to show good faith, agreed on the argument to stipulate to make Einstein a party defendant to the action, and allow him to litigate therein his claim to all or any of the property taken from the warehouse, and procure an undertaking by a surety company in the sum of $5,000, conditioned to satisfy any judgment Einstein recovered therein. If the plaintiffs, within five days, give such a stipulation and file such an undertaking, the motion to vacate will be denied, and, in default thereof, it will be granted.