THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM J. RODGERS, Appellant, v. BIRD S. COLER, as Comptroller of the State of New York, Respondent.

*Municipal contract — effect of a non-compliance by the contractor with the provisions of the Labor Law — right of the city to refuse payment — it must first elect to annul the contract — a law to the contrary effect is unconstitutional — remedy of the contractor by mandamus.*

Where a contract made with a municipality for the grading of a street therein, provides that the chief engineer of highways shall decide all questions relating to the execution of the contract on the part of the contractor, and that the employees of the contractor shall receive the prevailing rate of wages in accordance with section 3 of chapter 415 of the Laws of 1897, known as the Labor Law, as amended by chapter 567 of the Laws of 1899, and "that this

contract shall be void and of no effect, unless the person or corporation making or performing the same shall comply with the provisions of the Labor Law," a city officer is not justified — certainly when the city has taken no steps to avoid the contract, and still continues to accept its benefits — in refusing to draw his warrant for a portion of the contract price certified by the chief engineer of highways to be due the contractor, on the ground that on an investigation, pursuant to a complaint made by an officer of a labor union presented after the work had been performed, he found that the contractor had not paid, and did not pay, the prevailing rate of wages to his employees in the locality where the work was to be performed, and that the contractor had an adequate remedy at law.

In such a case the duty of drawing the warrant imposed upon the city officer is a merely ministerial act which may properly be enforced by mandamus.

The prohibition contained in section 3 of the Labor Law, against the payment of any sum by any officer of a municipal corporation for work done under any contract which, in its form or manner of performance, violates the provisions of that section, applies only where the contract has been avoided by the municipality. This construction is sustained by section 4 of the Labor Law, authorizing any citizen of the State to "maintain an action for the purpose of securing the cancellation or avoidance of any contract which by its terms or manner of performance violates this act."

To give the prohibition contained in section 3 a construction which would authorize the municipality, before electing to avoid a contract, to refuse payment for work done thereunder, would violate the provision of the Constitution that "No person shall * * * be deprived of life, liberty or property without due process of law."

Where the Legislature authorizes a municipal corporation to make a contract, under and by the terms of which the contractor is entitled to receive certain sums of money at certain stated periods upon performing the work that he agrees to do, and the contractor performs the work which entitles him to such payments, no act of the Legislature can relieve the municipal corporation from the obligation to pay therefor.

*Semble*, that a contract made by a municipality containing a provision by which the contractor agrees that, in the event of his violating the Labor Law, he shall not be entitled to receive any money from the city, notwithstanding the fact that he has in other respects complied with the contract and has performed the work which he has agreed to perform for the city, will be binding upon the contractor, whether the insertion of such a condition in the contract be required by an express provision of law or not.

VAN BRUNT, P. J., and O'BRIEN, J., dissented.

APPEAL by the relator, William J. Rodgers, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 26th day of June, 1900, denying his motion for a peremptory writ of mandamus.

*L. Laflin Kellogg,* for the appellant.

*Theodore Connoly,* for the respondent.

INGRAHAM, J.:

The appellant applied to the court below for a mandamus requiring the respondent to deliver to him a warrant on the chamberlain of the city of New York for the payment of the sum of $2,863, the amount earned under a contract for regulating and grading One Hundred and Thirty-fifth street, from Amsterdam avenue to the Boulevard, and to make the said payment under the said contract. This application was founded upon an affidavit which alleges that the relator made and entered into a contract with the city of New York, whereby the relator agreed to regulate and grade West One Hundred and Thirty-fifth street, from Amsterdam avenue to the Boulevard; that in said contract it was provided: "To prevent all disputes and litigations, it is further agreed by and between the parties to this contract that the Chief Engineer of Highways shall, in all cases, determine the amount or quantity of the several kinds of work which are to be paid for under this contract, and he shall determine all questions in relation to said work and the construction thereof, and he shall, in all cases, decide every question which may arise relating to the execution of this contract on the part of the said contractor, and his estimate and decision shall be final and conclusive upon the contractor, and such estimate and decision, in case any question shall arise, shall be a condition precedent to the right of the party of the second part to receive any money under this agreement;" that the payments to be made to the relator were to be in monthly installments of seventy per cent of the amount agreed to be paid for the work performed and materials furnished and delivered. The relator proceeded under the said contract, and during the month of March, 1900, the relator carried out and performed the covenants and conditions thereof according to its terms and to the satisfaction of the commissioner of highways. That on or about the 23d day of April, 1900, the engineer in charge of the work being done under said contract, and the commissioner of highways of the city of New York, duly made a certificate in writing by which it appears that there was earned under said contract by the said relator during the month of March,

1900, the sum of $4,090, and that the seventy per cent thereof amounted to the sum of $2,863. Copies of such certificates are annexed to the affidavit. It was further alleged that the respondent, the comptroller of the city of New York, had drawn his warrant on the chamberlain of the city of New York for the sum of $2,863, and that the same has been signed and countersigned by the properly authorized officers of the city of New York, but that the said comptroller refuses, on demand, to deliver the same to the relator or to make the said payments under said contract. None of these allegations are denied by the respondent. The certificates annexed to the affidavit are such as, by the provisions of the contract, entitled the relator to be paid the sum mentioned for work done during the month of March, 1900.

In opposition to this application an affidavit of the respondent was submitted, by which he calls attention to section 3 of chapter 415 of the Laws of 1897, known as the Labor Law, as amended by chapter 567 of the Laws of 1899, to which attention will be called. He alleges that the said contract contained the following provision : " The wages to be paid for a legal day's work as hereinbefore defined to all classes of such laborers, workmen or mechanics upon all such public work, or upon any material to be used upon or in connection therewith, shall not be less than the prevailing rate for a day's work in the same trade or occupation in the locality within the State where such public work on, about or in connection with which labor is performed in its final or completed form is to be situated, erected or used. It is further agreed that each such laborer, workman or mechanic employed by such contractor, sub-contractor or other person on, about or upon such public work, shall receive the wages hereinafter set forth. It is further agreed that this contract shall be void and of no effect unless the person or corporation making or performing the same shall comply with the provisions of the Labor Law, Chapter 415 of the Laws of 1897, as amended by Chapter 567 of the Laws of 1899. The party of the second part further agrees to comply with all the provisions of Chapter 415 of the Laws of 1897, known as the Labor Law. The contract is to be void and of no effect unless the rate of wages specified in Section 3 of said Labor Law is paid, and where laborers are employed preference is to be given to citizens of the State of New York, as provided in Section 13

thereof." The affidavit further alleges that on or about the 19th day of April, 1900, a notice, a copy of which is annexed, was served upon the finance department, wherein and whereby it was charged and alleged that the relator herein violated the provisions of the Labor Law of the State of New York, in that the said relator has not and does not pay to his employees working on said contract the prevailing rate of wages in the locality where such work is to be performed; that pursuant to the instructions of the comptroller, an investigation of the complaint has been conducted by the finance department of the city of New York; and the respondent alleges on information and belief that the relator herein has not paid and does not pay to his employees the prevailing rate of wages in the locality where the work is to be performed, and that the relator herein had an adequate remedy at law. Annexed to this affidavit is a letter dated April 19, 1900, signed " P. McMahon, Master Workman, D. A. 49, K. of L.," which states that the relator and other contractors are not paying the prevailing rate of wages to their drillers and engineers, and protesting against any and all money being paid until the above named comply with the law.

This money was due to the contractor for work performed during the month of March, 1900, and the letter containing the charges against the relator was dated April 19, 1900; and the comptroller alleges, upon information and belief, that the relator " has not and does not pay the prevailing rate of wages." There is no allegation that this relator failed to comply with the contract during the month of March or failed during that period to comply with the provisions of the Labor Law. The city officials having charge of the work had certified that the relator had complied with the contract, so that he was entitled by its terms to receive the amount of money specified.

I think it clear that the drawing and delivery of the warrant by the city official to discharge the indebtedness was a ministerial act which it is proper to enforce by mandamus. The question seems to have been presented in the case of *Matter of Freel* (148 N. Y. 165). In that case, as in the one now under consideration, the payments were to be made in monthly installments for the amount of work performed during each month. The thirty-first monthly estimate was made by the engineer, approved by the commissioners of city

works, and audited and allowed by the city auditor. Subsequently the thirty-second was approved and audited in the same manner. The amount of these two estimates was not paid, as the comptroller had refused to allow or approve these claims or issue warrants for their payment, although the work had been accepted by the commissioner of city works. The court held that as the city did not charge that the action of its officers was fraudulent, or attack it in any way, the officers of the city could not attack the certificate of the engineer or his return to the common council, by showing that the return was made under a mistaken idea of the facts, or that the certificate of the engineer was false or incorrect, and that as the officers acted only ministerially the relator was entitled to a peremptory mandamus. The same question was presented to the Appellate Division, second department, in the case of *People ex rel. Beck* v. *Coler* (34 App. Div. 167), where the court said : " The first claim of the appellants is that the relator's remedy is by action and not by mandamus. The rule that a mandamus will not be granted where the party has a remedy by action is one addressed to the sound discretion of the court, and is not of universal application. * * * We are of opinion that, where the right of a party to payment from the city is clear and there are funds on hand applicable to such payment, the court may and will, in the exercise of a sound discretion, compel by mandamus a ministerial officer to audit and pay the claim ; though if the city itself repudiated or denied the existence of the obligation the rule would be different. * * * The relator, therefore, made out a *prima facie* case and was entitled to the writ, unless the affidavits on behalf of the comptroller and auditor showed sufficient cause to the contrary."

If, therefore, the relator's right to the payment of this sum of money is clear, and the only act essential to effect the payment is the delivery to the relator by an officer of the city of the warrant in his hands, signed by the proper authorities, it would seem that the court would be justified in granting the mandamus asked for. We have thus to consider whether the affidavit of the respondent alleges any fact which would make the right to receive payment of the money doubtful. If this contract contained a provision by which the relator agreed that, in the event of his violating the Labor Law, he would not be entitled to receive any money from

the city, notwithstanding the fact that he had in other respects complied with the contract on his part and had performed the work he had agreed to perform for the city, I should have no doubt but that such contract would be binding upon him. The parties being sui juris, there could be no objection to their making such a contract, and it would be the duty of the court to enforce the contract that they had made. This relator or any other contractor could work for the city for nothing if so inclined; and if he agreed to perform the work without any compensation upon the happening of any contingency, there would be no reason for the city to pay for what he agreed to do for nothing; and whether the insertion of such a provision is required by an express provision of law or not seems to me to be immaterial. The right of the relator to receive this sum of money must, therefore, depend upon the terms of his contract with the city. What did he agree to do, and is the city liable, under the agreement that has actually been made? Under this contract the relator agreed that the wages to be paid for a legal day's work to all classes of laborers, workmen or mechanics upon such work shall not be less than the prevailing rate for a day's work in the same trade or occupation in the locality; that each such laborer, workman or mechanic employed by such contractor, subcontractor or other person on, about or upon such public work shall receive such wages. The contract also provided that it should be void and of no effect unless the plaintiff complies with the provisions of the Labor Law and unless the wages specified in section 3 of the said Labor Law are paid. These clauses were inserted in pursuance of the Labor Law and are not for the benefit of the contractor. They purport to regulate the actions of the contractor in performing the work under the contract, and impose upon him in the performance of such work the obligation to pay his workmen what the contract calls the prevailing rate of wages; thus preventing him from making an agreement with his employees to labor upon the terms agreed upon between them. In the nature of things the contract could not be void *ab initio*. Failure to pay the current rate of wages is a matter which could only be ascertained after work under the contract was in progress. There is no provision which makes the relator's compliance with the obligation above referred to, a condition to his receiving the agreed compensation. The contract

provided that a failure to comply with these covenants is to make the contract void and of no effect.

What construction is thus to be given to this provision of the contract by which the relator agreed that in case the agreement is not performed the contract shall be void and of no effect? As before stated, these provisions were inserted under a requirement of law and not for the benefit of the contractor, and it is for the city to enforce the forfeiture, if it is to be enforced. It is well settled that in construing contracts between municipal corporations and other corporations the same rule is to be applied as applies in regard to contracts between individuals. (*Baird* v. *Mayor*, 96 N. Y. 593.) It is the general rule in the construction of contracts that where there is a provision in a contract by which it is to become void because of the failure of a party to perform a covenant, it is only at the option of the party for whose benefit such a covenant was inserted that the contract becomes void. As was said in *Born* v. *Schrenkeisen* (110 N. Y. 59): "It is a general rule that when a written instrument provides that it shall become void in case of default by one party to perform some covenant therein contained, it becomes void only upon the claim, and at the option, of the party for whose benefit the covenant was inserted and who is injured by the default." Certainly upon a violation of this covenant by the relator, he could not declare the contract void, and thus relieve himself from its obligations. The right to avoid the contract or enforce this covenant must, therefore, be in the city as the contracting party for whose benefit and at whose request the covenant was inserted; and that being so, it is clear that the city can waive a violation of the said agreement by the contractor, or at any rate the contract would not be avoided until the city had elected to avoid it and gave notice thereof to the contractor. It is not claimed that any such notice was given or that the city has taken any steps to avoid this contract. On the contrary, it appears that the relator has proceeded with the work under the supervision of the proper city officials, and they have certified to its performance under the contract up to the 31st day of March, 1900, and that he was then entitled under the contract to be paid the sum of money which he now seeks to recover and the proper officers have so certified. So that the city, instead of taking any

steps to avoid the contract, so far as appears, is accepting the bene-
fits under it, and the contractor is proceeding with the work. It is
also settled that where a party to a contract is entitled to avoid it,
he must act promptly upon notice of the fact justifying such an
action, and if he fails to elect to avoid the contract he waives the
right under the contract to declare it void. (*Smith* v. *Alker*, 102
N. Y. 90; *Cobb* v. *Hatfield*, 46 id. 536.) As the city of New York
has failed to exercise its option to avoid this contract, it is still in
force and the relator as well as the city can enforce it.

The respondent further relies upon the prohibition contained in
section 3 of the Labor Law, as amended by chapter 567 of the Laws
of 1899. It is there provided: " No such person or corporation
shall be entitled to receive any sum, nor shall any officer, agent or
employee of the State or of a municipal corporation pay the same,
or authorize its payment from the funds under his charge or control
to any such person or corporation for work done upon any contract
which in its form or manner of performance violates the provisions
of this section."

The covenants contained in this contract which we have con-
sidered were inserted in compliance with the provisions of this sec-
tion of the Labor Law, and the prohibition immediately follows the
provision which required the covenants to be inserted in municipal
contracts. In construing the prohibition, we must consider the
whole section, and ascertain, if possible, the object sought to be
accomplished. Thus, the officers of the municipal corporations were
directed to insert in their contracts the clause which entitled the
municipal corporation to avoid the contract. The statute then pro-
vided that if that clause is violated, or the provisions of the Labor
Law are not complied with, the contractor shall not be entitled to
receive any sum; nor shall any officer, agent or employee of the
State or municipal corporation pay the sum to any contractor for
work done under any contract which in its form or manner of form
violates the provisions of the section. If we are right in the con-
struction of the section in the contract, so that a violation thereof
avoids the contract only upon the election of the city, then I think
this prohibition could fairly be considered to apply only where such a
contract has been avoided, so that no money was to be paid for work
done under a contract after the municipal corporation had elected

to avoid it. Such a construction would enforce the spirit of the statute, would authorize the·municipal corporation to avoid any contract where the contractor failed to comply with the provisions of the statute, and would prohibit any money being paid to contractors for work performed or supplies furnished after the contract had been avoided.

This construction would seem to be sustained by section 4 of the Labor Law, as amended by the same chapter (Laws of 1899, chap. 567) which amended section 3. It is there provided that any citizen of this State may "maintain an action for the purpose of securing the cancellation or avoidance of any contract which by its terms or manner of performance violates this act, or for the purpose of preventing any officer, agent or employee of such municipal corporation from paying or authorizing the payment of any public money for work done thereupon." Thus, when the officers of the municipal corporation fail to avoid a contract where the provisions of the act are not complied with, a citizen may·maintain an action to avoid such contract and to prevent any public money from being paid for work done thereunder. If it was the intention of the Legislature to declare the contract void by reason of a violation of this section of the Labor Law, so that a violation of any one of its provisions by operation of law made the whole contract a nullity, and took away the right of the contractor to recover for work performed prior to the violation of the statute or the covenants in the contract, no action would have been necessary or proper to avoid the contract; and when the Legislature makes provision whereby a citizen can bring an action to avoid the contract, such an action could only apply to a contract in force and which had not been avoided by operation of law. But if we are compelled to give this prohibition the construction claimed for it by the respondent, then such an act would· be clearly void as a violation of the provisions of the Constitution, that "no person shall *. * * be deprived of life, liberty or property without due process of law." (N. Y. Const. art. 1, § 6.)

Under this contract the relator was to do certain work for the city and was to receive seventy per cent of the amount that he earned each month at the end of the month. He has performed certain work during the month of March. He alleged that he has complied with all the terms of the contract on his part in perform-

ing the work for which he has asked to be paid the money that is due. The proper officers of the city have certified that he has performed the work and that he is entitled to the money. That such indebtedness of the city was property which the Legislature had no power to appropriate seems to me to be clear, and the Legislature attempts to prevents its payment not because of the judgment of any competent court, but by force of the legislative enactment. As was said by Judge O'Brien in the case of *Forster* v. *Scott* (136 N. Y. 577): " The validity of a law is to be determined by its purpose, and its reasonable and practical effect and operation, though enacted under the guise of some general power which the Legislature may lawfully exercise, but which may be and frequently is used in such a manner as to encroach by design or otherwise upon the positive restraints of the Constitution. What the Legislature cannot do directly it cannot do indirectly, as the Constitution guards as effectually against insidious approaches as an open and direct attack. Whenever a law deprives the owner of the beneficial use and free enjoyment of his property, or imposes restraints upon such use and enjoyment, that materially affect its value, without legal process or compensation, it deprives him of his property within the meaning of the Constitution. \* \* \* It is not necessary in order to render a statute obnoxious to the restraints of the Constitution, that it must in terms or in effect authorize an actual physical taking of the property or the thing itself, so long as it affects its free use and enjoyment, or the power of disposition at the will of the owner." And in *Gilman* v. *Tucker* (128 N. Y. 199) Chief Judge Ruger said : " It cannot be the subject of doubt that an act of the Legislature which provides for an involuntary transfer of property from one person to another, without due process of law, whether with or without compensation, violates the principles of the fundamental law whatever may be the pretext upon which it is founded," and he cites with approval from Cooley's Constitutional Limitations (p. 444), as an elementary principle, that a party cannot " by his misconduct so forfeit a right that it may be taken from him without judicial proceedings, in which a forfeiture shall be declared in due form. Forfeiture of rights and properties cannot be adjudged by legislative acts, and confiscation, without a judicial hearing after due notice, would be void as not being due

process of law." The same principle was applied in the case of *Colon* v. *Lisk* (153 N. Y. 188).

I am satisfied that the Legislature has power to prescribe the form of contracts which shall be made by municipal corporations with those entering into contracts with it. No one is bound to enter into such a contract or to do work for a municipal corporation, but when he does he must accept the terms of the contract as prescribed by law, and if he voluntarily makes a contract by which he is to receive pay only upon condition of his performing certain obligations or doing the work that he agrees to do in a certain way, the contractor certainly cannot complain if the city refuses to pay except upon his compliance with the terms of his engagement. Where, however, the Legislature authorizes the municipal corporation to make a contract, under and by the terms of which the contractor is entitled to receive certain sums of money at certain stated periods upon performing the work that he agrees to do, and the contractor performs the work which entitles him to a payment, no act of the Legislature can relieve the municipal corporation from the obligation to pay. The effect of such a construction of this act as is asked for by counsel for the respondent would lead to the result that, although a contractor had finished his work, and such work had been accepted by the city, if it should subsequently appear that the contractor had paid to one particular employee less than was subsequently ascertained to have been the prevailing rate of wages, then his whole right to receive from the city the amount that it was agreed should be paid is swept away by force of this provision of the statute. I cannot believe that such was the intention of the Legislature, and I do believe that if it was intended it was in violation of the Constitution and void.

It follows that the order appealed from should be reversed, with costs and disbursements, and the mandamus granted, with fifty dollars costs.

PATTERSON and HATCH, JJ., concurred; VAN BRUNT, P. J., and O'BRIEN, J., dissented.

O'BRIEN, J. (dissenting):

The relator moved for a peremptory writ of mandamus to compel the comptroller to deliver to him a warrant on the city chamberlain for the payment of $2,863. In his affidavit he alleges that on

February 5, 1899, he entered into a contract with the city of New York whereby he undertook to grade West One Hundred and Thirty-fifth street, which contract provided that seventy per cent of the amount earned thereunder each month, if not less than $1,500, was to be paid; that the decision of the chief engineer of highways as to the work done and materials furnished was, as to the contractor, final and conclusive; that he obtained from the commissioner of highways on April 23, 1900, a certificate showing that for the month of March, 1900, there was earned the sum of $4,090, of which seventy per cent amounted to $2,863; that he filed such certificate with the comptroller who drew up a warrant on the chamberlain for that amount, but who, on demand, refused to deliver said warrant.

The comptroller's affidavit denies that the contract referred to was duly carried out by the relator, and referring to the provision of the contract that in employing labor on the work to be done, the "Labor Law" (Chap. 415, Laws of 1897, as amd. by chap. 567, Laws of 1899), should be complied with, cites section 3 of that law, and alleges that the relator violated the obligation imposed upon him, in that he does not pay the prevailing rate of wages to his employees. Further, the answering affidavit alleges that the relator has an adequate remedy at law. The judge at Special Term denied the motion for the writ of mandamus, and from the order so entered the relator appeals.

We think the Special Term was right in refusing to grant a mandamus. The respondent, in addition to the other objections to the granting of the writ, insisted that the relator had an adequate remedy at law. Upon this point it is said in *People ex rel. Beck* v. *Coler* (34 App. Div. 167): "The first claim of the appellants is that the relator's remedy is by action and not by mandamus. The rule that a mandamus will not be granted where the party has a remedy by action is one addressed to the sound discretion of the court and is not of universal application. * * * Where the right of a party to payment from the city is clear, and there are funds on hand applicable to such payment, the court may and will, in the exercise of a sound discretion, compel by mandamus, a ministerial officer to audit and pay the claim; though if the city itself repudiated or denied the existence of the obligation the rule would be different."

· Applying this principle to the facts here, the question to be determined is whether or not, in the exercise of a sound discretion, it is proper to grant to the relator a writ of mandamus. That serious legal and constitutional questions are involved is evident from the opinion of Mr. Justice Ingraham and from the opinion of the learned judge at Special Term, who reached the conclusion that the relator was not only not entitled to the remedy of mandamus, but that on the merits he was not entitled to the payment under the contract, by reason of his failure to comply with the provision thereof relating to the Labor Law. Where such serious questions of law, depending to some extent upon disputed questions of fact, are involved, they should be tried in an action rather than disposed of upon affidavits on a motion for a mandamus.

It here appears that after the certificate of the engineer for work done during the month of March, 1900, was presented to the comptroller, steps were taken to prepare and deliver a warrant in payment, and these steps had advanced to the point where the comptroller was ready to deliver such warrant when his action was stayed by a notice served upon him in the form of a letter dated April 19, 1900, and signed " P. McMahon, Master Workman D. A. 49, K. of L.," which stated that the relator was not paying the prevailing rate of wages to drillers and engineers on the work, and protested against any money being paid until he had complied with the law. This, so far as appears, was the first notice that the city had that the relator had been violating his contract, and thereafter an investigation was made, and, as the result thereof, the comptroller swears, upon information and belief, " that the relator herein has not and does not pay the prevailing rate of wages to his employees in the locality where the work is to be performed." And the comptroller then refused to deliver the warrant for the reason that the Labor Law expressly provides (§ 3, as amd. by Laws of 1899, chap. 567): " No such person or corporation shall be entitled to receive any sum, nor shall any officer, agent or employee of the State or of a municipal corporation pay the same or authorize its payment from the funds under his charge or control to any such person or corporation for work done upon any contract which in its form or manner of performance violates the provisions of this section."

In view of this express provision, it will be seen that, in handing the warrant over to the relator there was something more involved than the doing of a merely ministerial act, and, as correctly urged by the respondent, "it is a rather startling doctrine that a public official can be compelled by mandamus to ignore or expressly violate the provisions of a statute." Accepting as true, therefore, as we must on this appeal, the facts stated in the opposing affidavit, it would appear that the relator has not only been guilty of a breach of his contract, but that he has deliberately offended against the statute. And it is evident that his right under any form of remedy to obtain payment is not only disputed and denied by the respondent, but placed in serious doubt.

Moreover, a disposition of the questions upon a summary application such as this would deprive the respondent of a proper legal advantage which he would have if the relator is compelled to resort to his remedy by action. Thus it would be necessary for the relator to allege in the complaint, and, if the allegation were denied, to prove at the trial, that he had faithfully performed all the terms and conditions of his contract with the city, including the provision therein by which he agreed to comply with the Labor Law. Upon his failure to make such proof, his right to the amount of the payment here sought would be seriously imperilled.

Whether the construction placed on the Labor Law by Mr. Justice Leventritt at Special Term or by Mr. Justice Ingraham on this appeal shall ultimately prevail, it is unnecessary for us now to determine, as we are here concerned only with answering the question whether, upon the facts presented, the relator's remedy is by mandamus or by action. For the reasons given, we think that the relator should be confined to his remedy by action to the end that all the questions, both of law and fact, may be formally and deliberately considered upon a trial rather than here upon affidavits on a summary application for a mandamus.

Van Brunt, P. J., concurred.

Order reversed, with costs and disbursements, and motion granted, with fifty dollars costs.