same time that the latter was an illegal exaction and was money not due the defendant. The court said:

"The sole question presented is whether the payment of this bonus of $1,-000 was, under the circumstances, voluntary or exacted when the plaintiff was under duress. * * * The plaintiff, in view of the way business is done in giving a new mortgage to pay off the old one, could not wait to make a tender and take legal action and he was not obliged to. He could submit to the exaction and pay the bonus, and sue to recover it back, because such a payment is not voluntary. In effect the defendant held plaintiff's property in its grasp through its lien thereon and would not surrender it until the unlawful exaction was complied with. The payment was made to free the property from the duress as much as if it had been a chattel and the defendant had it in his possession under a pledge, refusing to part with it unless the bonus was paid. Under these circumstances, the compulsion was illegal, unjust, and oppressive, and the plaintiff, having submitted under protest, had the right to recover, according to the authorities. The refusal of the defendant to accept the mortgage debt and interest unless the bonus was paid placed the plaintiff in a position where he was compelled to submit to the exaction in order to receive a satisfaction of the defendant's mortgage and secure the money on the new loan which would protect him in the emergency."

It seems to me under that authority, and the cases therein cited, that the well-established rule, that a payment involuntarily made under duress of goods may be recovered, has been extended to cover real estate transactions, and that, under the facts developed in the case at bar, the court was justified in submitting the facts to the jury for them to determine whether, within the definition as given by him, the payment complained of was voluntary or involuntary, and that the jury was justified in finding that the plaintiff was compelled to make a payment not contemplated in the original transaction and for which she was not liable, to free her property from the lien of the mortgage, so that she might consummate the loan which she had negotiated for the purpose of paying off this prior mortgage upon her property.

The judgment and order appealed from should therefore be affirmed, with costs to the respondent.

DOWLING, J., concurs.

---

(159 App. Div. 252.)

PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. WALSH, Deputy Comptroller, et al.

(Supreme Court, Appellate Division, Third Department. November 26, 1913.)

1. MANDAMUS (§ 101*)—SUBJECTS OF RELIEF—AUDITING OFFICERS.

Mandamus will not be granted to control the discretion of state auditing officers and to dictate their disposition of a claim growing out of the construction of the Barge Canal, nor to compel them to approve or allow a claim or any particular items thereof.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 211–216; Dec. Dig. § 101.*]

2. MANDAMUS (§ 102*)—SUBJECTS OF RELIEF—MINISTERIAL DUTY.

Where the law has appointed another officer or tribunal to examine and certify claims against the state and has made such certificate conclusive,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the duty of the auditor or other proper officer to draw a warrant for the payment thereof is purely a ministerial duty enforceable by mandamus.

[Ed. Note.—For other cases, see. Mandamus, Cent. Dig. §§ 217–219, 221, 222; Dec. Dig. § 102.*]

3. Canals (§ 5*)—Establishment and Maintenance—Constitutional Provisions.

Under Const. art. 8, § 10, authorizing the Legislature to provide for the improvement of canals, and section 8, providing that the Legislature shall not sell, lease, or otherwise dispose of the state canals which shall remain the property of the state and under its management forever, the state must have the absolute title to the canals and to so much of the adjacent land as is necessary for their maintenance and operation.

[Ed. Note.—For other cases, see Canals, Dec. Dig. § 5.*]

4. Railroads (§ 76*)—Right of Way—Franchise.

Under Railroad Law (Consol. Laws 1910, c. 49 [Laws 1910, c. 481]) § 8, subd. 4, giving a domestic railroad the right to construct its road across any of the canals of the state which its route shall intersect, the railroad has no title in or to the bed of the canal, but only a franchise necessary for carrying out its purposes and consistent with Const. art. 7, §§ 8, 10, requiring the state to own and operate its canals.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 195, 196, 199–201; Dec. Dig. § 76.*]

5. Mandamus (§ 93*)—Boards and Public Officers—Contracts.

Under Const. art. 7, §§ 8, 10, the state must have the absolute title to its canals and to so much of the adjacent land as is necessary for their maintenance and operation by the state. Laws 1910, c. 334, amending Laws 1908, c. 195, authorized a special examiner and appraiser to make agreements for the purchase of specific property within the survey made by the state engineer, and if in the opinion of the canal board it was possible to acquire for the state "a good title to the entire interest of any specific parcel of land or other property or right necessary for said improvement within the survey," to determine the compensation to be paid therefor, which upon audit should be paid by a warrant of the comptroller or treasurer. *Held* that, upon taking the property of a railroad which crossed the canal, the special appraiser and the canal board were without authority to contract to convey to the railroad an easement in the property so taken, since if the conveyance were made the state would not have acquired a good title to the "entire interest" of the parcel, and hence that specific performance of the contract would not be compelled by mandamus.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 195; Dec. Dig. § 93.*]

6. Mandamus (§ 176*)—Jurisdiction of Relief—Parties Defendant.

Mandamus should not go to the extent of commanding persons not parties to the proceeding, as by directing a state special examiner and appraiser to procure the execution of a conveyance to relator from the proper state officers whoever they may be.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 392–394; Dec. Dig. § 176.*]

Kellogg and Howard, JJ., dissenting in part.

Appeal from Special Term, Albany County.

Mandamus by the People, on the relation of the New York Central & Hudson River Railroad Company, against Michael J. Walsh, Deputy Comptroller, acting as Comptroller of the State of New York, Duncan W. Peck, Superintendent of Public Works of the State of New York, and William B. Milliman, Special Examiner and Appraiser of

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Canal Lands of the State of New York. From an order granting the relator's motion for a peremptory writ, defendants appeal. Order reversed, and motion for peremptory writ denied.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Thomas Carmody, Atty. Gen., and Edward J. Mone, Deputy Atty. Gen., for appellants.

Visscher, Whalen & Austin, of Albany (H. Le Roy Austin, of Albany, of counsel), for respondent.

WOODWARD, J. The order appealed from commands the acting comptroller to audit the claim of relator and to draw his warrant upon the State Treasurer for the sum of $352,993.50, with interest, and commanding the superintendent of public works to execute and deliver to relator a conveyance of an easement in certain real estate, and commanding the special examiner and appraiser to execute, or procure the execution of, and delivery to relator of, a conveyance of an easement in said real estate. These things are commanded for the purpose of the settlement of relator's damages arising by reason of Barge Canal Appropriation No. 1,874, and in accordance with a written agreement entered into between the special examiner and appraiser and the relator.

[1] There can be no question that under ordinary circumstances the State Comptroller, or his deputy, is called upon to audit claims against the state growing out of the construction of the Barge Canal, and the general rule is that the writ will not be granted to control such officers' discretion and dictate their disposition of the claim. It is also well established that auditing officers cannot be compelled to approve or allow a claim or any particular items thereof, or to allow any specified amount. 19 Am. & Eng. Ency. of Law, 783; People ex rel. Grannis v. Roberts, 163 N. Y. 70, 57 N. E. 98.

[2] Where, however, the law has appointed another officer or tribunal to examine and certify the claim, and made such certificate or allowance conclusive, the duty of the auditor or other proper officer to draw a warrant for the payment of such claim is a purely ministerial duty and may be enforced by mandamus. 19 Am. & Eng. Ency. of Law, 787; Matter of Freel, 148 N. Y. 165, 42 N. E. 586. If the question involved here related purely to the drawing of a warrant for the amount agreed upon between the relator and the special examiner and appraiser, we should be inclined to hold that the order was properly granted, upon the ground that the amount of the claim had been fixed by officials specially provided by statute for this purpose, and that the comptroller had merely a ministerial duty to perform in connection with the matter. But the order appealed from goes much further; it commands other officers to make conveyance of real estate, or an interest therein, and it even commands the special examiner and appraiser to make a conveyance, or procure some proper party to make a conveyance, of an easement under the terms of a certain contract, and it becomes necessary to determine whether there was any authority for making such a contract, and if the order is for the enforce-

144 N.Y.S.—24

ment of a strictly legal right on the part of the relator and for which it has no other proper remedy.

In November, 1909, acting under the provisions of chapter 147 of the Laws of 1903, known as the Barge Canal Act, the proper officers of the state of New York served upon the relator a copy of the Barge Canal Appropriation Map No. 1,874, with notice of filing thereof, and by such notice demanded immediate possession of such property as was described on said map. The property demanded constituted a part of the relator's right of way 586.3 feet in length, used for the tracks of the New York Central & Hudson River Railroad. In other words, the route of the Barge Canal intersected that of the relator's railroad, and it became necessary for the state to appropriate the lands already dedicated to one public purpose to a second public purpose, and to this end it became necessary for the relator to construct a bridge over the Barge Canal, at a considerable cost for construction and maintenance, and the value of the real estate owned by the relator, together with the cost of construction and maintenance of the bridge, became a matter for adjustment between the relator and the state.

[3] Under the Constitution of this state (section 10, art. 7), the Legislature is authorized to provide for the improvement of the canals, and by section 8 of the same article it is provided that:

"The Legislature shall not sell, lease or otherwise dispose of the Erie Canal, the Oswego Canal, the Champlain Canal, the Cayuga and Seneca Canal, or the Black River Canal; but they shall remain the property of the state and under its management forever."

It will thus be seen that the state must have the title to the canals and to the lands necessary for the maintenance and operation of the same; they are to "remain the property of the state and under its management forever," and this requires an absolute title to all of the property included in the canals and in so much of the land adjacent to the prism as is necessary for the maintenance and operation of the canals as a means of transportation. When it became necessary to intersect the right of way of the relator's railroad, it devolved upon the state to purchase of the relator its rights in the real estate to the full width of the canal and its appurtenances, and to pay all of the damages which the relator should sustain by reason of the taking of this portion of its roadbed and right of way, and the state had no right, under the law, to take more of the relator's property than was necessary for the public purpose contemplated by chapter 147 of the Laws of 1903, and which was pointed out by the map above referred to, and it had no right to take less than all of the property rights of the relator in and to such real estate, subject to the payment of just compensation for the property taken and the resulting damages to the relator's remaining property.

[4] It is true, of course, that under the provisions of subdivision 4 of section 8 of the Railroad Law (chapter 481, Laws of 1910), the relator, as a domestic railroad corporation, has the right to "construct its road across, along or upon any stream, water course, highway, plank road, turnpike, or across any of the canals of the state, which the route of its road shall intersect or touch"; but this does not give the railroad

company any title in or to the bed of the canal; it is a privilege, in the nature of a franchise, necessary for carrying out the purposes of the corporation, and is consistent with the provisions of the Constitution which require the state to own and operate the canals. Owning the fee and being charged with the duty of managing the canals forever, the state has the full power to regulate the manner in which the relator shall cross its canals, and as well those to be constructed in the improvement of the canals as in those which existed at the time the railroad was constructed, subject, of course, to the payment of just compensation for the damages sustained.

[5] By the provisions of chapter 334 of the Laws of 1910, the former statute in reference to a special examiner and appraiser of canal lands was amended (Laws 1908, c. 195), and it provided that this special examiner and appraiser should be charged with the duty of visiting and inspecting the "lands, structures and water rights, or property rights appertaining thereto, appropriated for the use of the improved canals, and for the purposes of the work of improvement authorized by chapter one hundred and forty-seven of the laws of nineteen hundred and three, as provided by section four of said acts and acts amendatory thereof," and that:

Such "special examiner and appraiser * * * either upon the application of the owners of such lands, structures and waters, or property rights pertaining thereto, or of the superintendent of public works, may fix and determine with each or any of said respective owners upon a fair valuation of any specific portion of said real property, structures, waters or property or rights connected therewith, or damage resulting to any such owner or occupant, and may agree upon a price to be paid therefor by the state and accepted by said respective owner or owners in full compensation for such specific property or rights, or for the damage caused by said work or improvement. * * * If in the opinion of the canal board it is possible by means of such appraisal and agreement, to acquire for the state a good title to the entire interest of any specific parcel of land or other property or right necessary for said improvement within the survey made by the state engineer and surveyor and certified by him, * * * and that it will be for the advantage of the state to obtain such specific property or right without condemnation proceedings or resort by said owners to the Court of Claims, said canal board shall approve such agreement so entered into with such owners, and upon the presentation and delivery of proper conveyances, duly approved by the Attorney General, said canal board may certify its acceptance thereof to the comptroller for payment under the provisions of section thirteen of chapter one hundred and forty-seven of the laws of nineteen hundred and three, and acts amendatory thereof, to the owner or owners severally named therein. The treasurer shall pay to such owner or owners upon the warrant of the comptroller, after due audit by him, the amounts specified in such certificates."

Here is clear authority for the special examiner and appraiser to enter into agreements for the purchase of specific property within the survey made by the state engineer and surveyor and certified by him, and, with the approval of the canal board, to determine the amount of compensation to be paid; but where is the authority for the contract which has in effect been decreed to be specifically performed by the order here under review? What authority is given to the special examiner and appraiser and the canal board to enter into a trade in reference to the real property required for canal purposes by the state? What right have any of these persons to enter into a contract to convey

any part of the lands held for canal purposes, or to grant any easements therein? The statute does not in terms provide for anything more than the agreement upon the price to be paid, the just compensation to be made for the taking of specific property, and, under the prescribed conditions, the treasurer is to pay the amount agreed upon. Beyond this there is no authority to act. No one, not even the Legislature itself, has the power to sell or convey any property held for canal purposes— certainly no right to convey any part of the canal prism—and this is what is attempted to be done under the contract. The contract provides for taking the property included in the map which has been filed and under which the state acquires the right to possession, and to pay therefor a specific sum of money, and then the state is to convey an easement in the property thus disposed of to the relator, for railroad purposes, and it is agreed in the contract that:

"Such quitclaim deed executed by the party of the first part shall also contain a specific statement that it is intended to convey thereby an easement as therein described, and that such conveyance is not intended to be, in any sense, a franchise or license."

So that if the contract is carried out, as the writ directs, the state of New York will not have acquired "a good title to the entire interest of any specific parcel of land or other property or right necessary for said improvement within the survey made by the state engineer and surveyor and certified by him" (chapter 334, Laws of 1910), but will have a parcel of land burdened with an easement for railroad purposes, and which is entirely inconsistent with the provisions of the Constitution which require the full ownership and management of the canals by the state. The law, as we understand it, contemplates nothing less than the absolute and unqualified ownership of the canals, with the full power to manage the same, and an easement in any part of the canal lands for railroad purposes is inconsistent with the constitutional provisions above referred to, and the Legislature not having authorized any different contract than such as the law contemplates, the instrument bearing date of July 27, 1911, and which purports to be an agreement between the state and the relator, is not of binding obligation, because beyond the authority conferred by law.

[6] It is the province of the writ of mandamus to enforce clear legal rights, and it should not be extended to decree specific performance of contracts which are clearly in excess of the authority vested in state officials, and it certainly should not go to the extent of commanding a person who is not a party to the proceeding, as is attempted in the direction to the special examiner and appraiser who is directed to procure the execution of a conveyance from the proper state officers, whoever they may be.

The order appealed from should be reversed, with costs.

Final order reversed, with costs, and motion for peremptory writ of mandamus denied, with $10 costs. All concur, except KELLOGG and HOWARD, JJ., who vote for affirmance as to the mandamus to the comptroller for the money damages.