In the Matter of the Application of RAPID TRANSIT SUBWAY CONSTRUCTION COMPANY, Appellant, for a Writ of Mandamus Directed to CHARLES L. CRAIG, as Comptroller of the City of New York, Respondent.

First Department, December 16, 1921.

Municipal corporations — contracts — proceedings for peremptory writ of mandamus directing comptroller of city of New York to draw warrant in favor of petitioner, assignee of contractor, under finding in arbitration award based on agreement of parties — delay in asking for payment not defense where city participated in all proceedings subsequent to award — Statute of Limitations not applicable — waiver — subsequent contract construed as not indicating waiver of any rights or obligations under award — car control device attached to subway express car falls within definition of word "equipment" as defined in contract — determination of Transit Construction Commissioner conclusive upon comptroller in absence of fraud, collusion or palpable error — duty of comptroller to issue warrants purely ministerial and not discretionary — comptroller has no power to review acts of Public Service Commission or board of estimate and apportionment — peremptory writ of mandamus granted.

In proceedings for a peremptory writ of mandamus directing the comptroller of the city of New York to draw a warrant in favor of the relator, a subway construction company, upon the voucher of the Transit Construction Commissioner, it appeared that in 1900 the city of New York entered into a contract for the construction, equipment, maintenance and operation of a certain rapid transit railroad in the city; that under the contract, described as contract No. 1, the city was to pay the contractor a certain sum for the construction of the road, plus additional amounts for real estate and terminals, the contractor to equip, maintain and operate the railroad at his own cost for a term of years specified in the leasing provision in the contract; that by its terms, the chief engineer of the board of rapid transit railroad commissioners was to determine, subject to review by arbitration, the reasonable value of any work done or materials additionally required and the amount of deduction to be made from the contract price because of work omitted; that the contractor presented claims for alleged additional work and materials and the city made claims for deductions by reason of the omission of certain work required to have been done under the contract; that the chief engineer of the Public Service Commission made his determination in respect to the conflicting claims which in view of its unsatisfactory nature was submitted to a board of arbitrators; that the arbitrators, after proceedings in progress for two and one-half years, agreed that there was due the contractor the

sum of $2,260,534.58; that the parties, on December 30, 1911, entered into a final agreement of settlement based upon that amount, empowering the board of arbitrators to make the final award to the petitioner, as assignee, under contract No. 1 which was approved by the board of estimate and apportionment of the city of New York who directed the comptroller to issue corporate stock of the city required to pay the award; that the agreement providing for the award also provided for its payment in installments, for the construction of new subways, for additions to the system, or for new equipment where the additions were not permitted by the city as extras under existing contracts. It also appeared that the agreement provided that the use of the award or any part thereof should be subject to the approval of the Public Service Commission, and that the comptroller should make such payment or payments upon vouchers accompanied by a requisition of the construction company and the Interborough Company. An application was made by both companies to the then Transit Construction Commissioner, who had succeeded to the powers of the Public Service Commission of the First District, for a request for the payment of $1,750,000 for the purpose of installing a multiple unit car door control device upon cars of the subway express service which installation had been approved by the Transit Construction Commissioner. The Commissioner subsequently approved the payment to the petitioner of the amount for the purpose of installing the multiple unit car door control device and ordered that the equipment should be provided as equipment under contract No. 1. A voucher for the amount approved of by the Transit Commissioner was transmitted to the comptroller of the city by the petitioner, duly certified and approved, and payment demanded. The comptroller refused to pay the award in spite of the certificate of the auditor of rapid transit costs of the office of the Transit Construction Commissioner to the effect that the amount of the voucher was to be employed for one of the uses specified in the agreement providing for the award. The comptroller contended that the petitioner was not entitled to the award since no claim had been made for payment during the period of nearly nine years from the execution of the agreement and because the first agreement had been merged in a subsequent contract, known as contract No. 3.

*Held*, that the delay in time in making the claim after the award had been concluded cannot be successfully urged in defeating the relator's claim, since the defendant city knew of and participated in the proceedings in which reference was made to the award and no one questioned the existence of the arbitration award nor was there any suggestion that it was not available for the purpose proposed and since there was no claim that any Statute of Limitations barred the recovery;

That there was nothing in contract No. 3 which would indicate that there had been a waiver of any of the rights or obligations of either of the parties arising under the contract here in question;

That the contention of the comptroller that the agreement of December 30, 1911, is not an unqualified admission of indebtedness on the part of the ·

Matter of Rapid Transit Subway Const. Co.        47

App. Div. 45]        First Department, December, 1921.

city of New York and if the contractor believed that a liability existed judgment could have been procured, cannot defeat the right of petitioner to a peremptory mandamus, for an undisputed settlement of a controversy by agreement of the parties is entitled to the same force and effect as though a judgment had been entered in an action brought upon the claim;

That a car control device attached to a car becomes a part of the rolling stock and falls within the definition of the word "equipment," defined in the contract "to mean all equipment used or intended for use on the railroad, including all motors, cars, whether used for passengers, freight, express or any other purposes, and all other rolling stock;"

That in the absence of any fraud or collusion or palpable error the determination of the Transit Construction Commissioner is final and conclusive upon the comptroller;

That the duty of the comptroller to issue the warrants in question is purely ministerial and under the statutes he cannot exercise any discretion as to whether he will issue the warrant or not. Nor can he exercise a power of review over the acts of the Public Service Commission or the board of estimate and apportionment, and, therefore, the peremptory writ should have been granted.

APPEAL by the petitioner, Rapid Transit Subway Construction Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 7th day of June, 1921, denying petitioner's motion for an order directing the issuance of a peremptory writ of mandamus compelling Charles L. Craig, as comptroller of the city of New York, to draw and issue a warrant upon the chamberlain of the city of New York in favor of the said Rapid Transit Subway Construction Company for the sum of $1,750,000, upon the voucher of the Transit Construction Commissioner for the State of New York, heretofore filed with the said comptroller in that amount.

*James L. Quackenbush* [*Frederick G. Watson* and *Charles F. Kingsley* with him on the brief], for the appellant.

*John P. O'Brien, Corporation Counsel,* for the respondent.

GREENBAUM, J.:

The facts upon which this controversy arises as set forth in the moving affidavits and not denied may be summarized as follows: In 1900 the city of New York, through its then board of rapid transit railroad commissioners, entered into a contract with one John B. McDonald for the construction, equipment, maintenance and operation of the Manhattan-Bronx Rapid

Transit railroad. This contract is described in the papers before us as contract No. 1. Under that contract the city was to pay McDonald for the construction of the railroad the sum of $35,000,000, plus certain additional sums for real estate and for terminals, and the contractor was to equip, maintain and operate the railroad at his own cost for a term of years specified in the leasing provision in the contract. Under the terms of the contract, the chief engineer of the board of rapid transit railroad commissioners was to determine, subject to review by arbitration, the reasonable value of any work or materials additionally required and the amount of deduction to be made from the contract price because of work omitted. The contractor presented claims for alleged additional work and materials, and the city made claims for deductions by reason of the omission of certain work required to have been done under the contract by the contractor. The chief engineer of the Public Service Commission made his determination in respect of the conflicting claims. This determination being unsatisfactory to both the city and the contractor, the matters in dispute were submitted under the provisions of the agreement to a board of arbitrators. The arbitration proceeding continued for about two and one-half years, and during its progress a protocol, as it was termed by the parties, was entered into between the counsel representing the city and the counsel representing the Rapid Transit Subway Construction Company, with a view of reaching a final settlement and adjustment of the matters in dispute. Under the provisions of the protocol, the parties had a series of conferences at Saratoga Springs during the summer of 1910, as a result of which an agreement was reached that the matters in dispute were to be settled and adjusted by the payment to the contractor of the net sum of $2,260,534.58. Final agreement of settlement was duly executed between the parties on December 30, 1911. Under the agreement the board of arbitrators was empowered to make the final award to the Rapid Transit Subway Construction Company, as assignee, under contract No. 1, in the net sum of $2,260,534.58. The final agreement of settlement was approved and consented to by the board of estimate and apportionment by resolution unanimously adopted at its meeting held on December 14,

1911, accompanied by a further unanimous resolution authorizing and directing the comptroller to issue corporate stock of the city of New York required to pay the award. On February 2, 1912, the board of arbitrators made its final award and determination in favor of the Rapid Transit Subway Construction Company, as assignee, in the net sum of $2,260,534.58. On January 30, 1913, the Rapid Transit Subway Construction Company, with the consent of the Public Service Commission for the First District, acting under the Rapid Transit Act, duly assigned to the Interborough Rapid Transit Company so much of the said contract of February 21, 1900, as provided for the construction of the Rapid Transit railway, but there was an express reservation to the Rapid Transit Subway Construction Company that the moneys to be paid under the agreement of December 30, 1911, were to be paid to it.

The agreement of December 30, 1911, although providing for the payment of the sum above mentioned, was coupled with provisions which read as follows:

" The City shall from time to time and in installments as hereinafter provided, pay to the Construction Company the said sum of $2,260,534.58 upon vouchers which shall include such final award and certificate of the Commission:

" Provided, however, and it is expressly agreed, that payment of said sum, although made and deemed to be made as paid under the contract for extra work, shall be reserved by the City until required and when so required shall be made in installments as required for some of the following purposes:

" (a) For the construction of new subways.

" (b) For additions hereafter made to existing subways or for new equipment where the additions are not allowed by the City of New York as extras under existing contracts. The phrase ' new equipment ' shall be deemed to mean any equipment delivered on the subway after the 22nd day of June, 1910;

"*Provided Further*, and it is hereby expressly agreed, that the use of said sum or any part thereof, for any of such purposes shall be subject to the approval of the Commission, which approval shall be given upon application of Construction Company and Interborough Company in case the Commission deem such purpose promotive of the public convenience."

It was also provided by article V of the agreement as follows:

" The Comptroller of the City shall make such payment or payments upon a voucher or vouchers as aforesaid, accompanied by a requisition of the Construction Company and Interborough Company for the said sum or a part thereof corresponding with the amount stated in the voucher, which shall show that the sum for which requisition is made will be employed for one of the uses aforesaid, and which shall have annexed to it the written approval of the Commission."

On July 12, 1920, an application was made by the Rapid Transit Subway Construction Company and the Interborough Rapid Transit Company to the then *Transit Construction Commissioner*, who had succeeded to the powers and duties of the Public Service Commission for the First District, for a request for the payment of $1,750,000, as the first installment of the award, to be used and expended for the purposes of installing a multiple unit car door control device upon 982 cars of the subway express service, which installation had been previously approved by the Transit Construction Commissioner by an order adopted by him on April 23, 1920.

On December 15, 1920, the Transit Construction Commissioner approved the payment to the Rapid Transit Subway Construction Company of $1,750,000 to be used for the purpose of *installing such multiple unit car door control device.* At the same time he made an order modifying his order of April 23, 1920, " so as to provide that if and to the extent that the cost of such installation should be paid for from the said award of February 2, 1912,    *    *    *    then the equipment so paid for should be deemed to have been provided as equipment under the said Contract No. 1." A stipulation to that effect dated December 20, 1920, was entered into between the city of New York, through the Transit Construction Commissioner, and the Interborough Rapid Transit Company. After the execution of the stipulation the Transit Construction Commissioner transmitted to the comptroller of the city of New York a voucher in favor of the Transit Construction Company, as assignee, for $1,750,000 as the first installment on account of the net amount of $2,260,534.58, to be paid by the city of New York to the Transit Subway Construction Company under the award of the arbitrators. Annexed to the voucher was a copy of the

award, the joint requisition of the Interborough Rapid Transit Company and Rapid Transit Subway Company, and the order of the Commissioner of December 15, 1920, approving the installation of a multiple unit car door control device as equipment promotive of public convenience. The voucher was duly certified and approved by the engineer of equipment and operation and the chief engineer; and the auditor of rapid transit costs of the office of the Transit Construction Commissioner appended to the voucher his certificate that the amount of this voucher is to be employed for one of the uses specified in said agreement of December 30, 1911, as being promotive of public convenience, namely, the installation of a multiple unit car door control device. Payment of such voucher was duly demanded, but the comptroller has wholly failed and refused to pay the same or any part thereof.

The comptroller, in his opposing affidavits to the application herein, makes no denial of the material allegations of facts of the moving party, nor is there any new matter submitted to the court by way of affirmative defenses. The comptroller sets up a number of legal conclusions, that (1) the relator is not entitled to the benefit of the award since no claim was made for payment during the period of nearly nine years from the execution of the agreement of December 30, 1911; and (2) because that agreement has been superseded by or merged in the contract of March 19, 1913, known as contract No. 3, entered into between the city of New York, acting by the Public Service Commission for the First District, and the Interborough Rapid Transit Company.

As to the first objection raised by the comptroller, as to the lapse of time in making a claim after the award had been concluded, it may be said that while it does seem to be strange that such a delay should have taken place before the Rapid Transit Company attempted to avail itself thereof, it appears that the award was asserted in proceedings instituted in 1918 by the Interborough Rapid Transit Company, under the Public Service Commissions Law, for the approval by the Commission of the issuance of securities for the purpose of carrying out its obligations under contract "No. 3" for new subways. It also appears that the city knew of and participated in these proceedings, in which reference was made to the award. and

no one questioned the existence of the arbitration award, nor was there any suggestion that it was not available for the purpose proposed. The respondent does not claim that any Statute of Limitations has barred the recovery. Under the circumstances it is difficult to see how the delay can be successfully urged in defeating the relator's claim.

As to the contention that the agreement of December 30, 1911, was merged in the latter contract, it is pertinent to quote the following provision appearing on page 3 of contract 3 towards the end of article 1: " The City and the lessee further agree upon the modification of Contract No. 1 and Contract No. 2 in the respect herein set forth, but nothing in this contract shall be construed as a modification or waiver of any of the rights or obligations of the respective parties under Contract No. 1 and Contract No. 2, except in the respect and to the extent herein specifically set forth."

One will scan the provisions of contract No. 3 in vain to find any language therein which would indicate that there had been a waiver of any of the rights or obligations of either of the parties arising under contracts Nos. 1 and 2 and our attention has not been called to anything in the contract which indicates a waiver. On page 5 of contract No. 3, under subdivision 8, there is an express recognition of modifications of and supplements to contract No. 1, in the following language: " December 30, 1911. Adjustment of controversy over extra work and omissions."

In respondent's brief it is claimed that the agreement of December 30, 1911, is not an unqualified admission of indebtedness on the part of the city of New York, and it is argued that if the contractor had believed there was any actual indebtedness of the city of New York by reason of the matters in controversy, judgment could be procured for the amount established in any court of competent jurisdiction and payment thereof obtained in full. Such an argument, however, is not persuasive. An undisputed settlement of a controversy by agreement of the parties is entitled to the same force and effect as though a judgment had been entered in an action brought upon the claim. It is also argued by the respondent that the installation of the car control device for which the money is to be used is not new equipment within the meaning

of contract No. 1.   Attention is called to the definition of the word " equipment " appearing in contract No. 1, and it is urged that there is nothing in the definition which would entitle that device to be embraced within its terms.   The word " equipment " is defined in the contract as follows: " The word ' equipment ' to mean all equipment used or intended for use on the railroad, including all motors, cars, whether used for passengers, freight, express or any other purposes, and all other rolling stock."   A car control device attached to a car becomes a part of the rolling stock, and assuredly would fall within the definition of the word " equipment."

It seems to us that the learned comptroller's construction is strained and not warranted by the context.   There can be no doubt that the device or equipment for which the voucher was issued was such an one for which the Transit Company would be obliged to pay.   It also seems to us that the determination of the Transit Construction Company that the installation of the multiple unit car door control device falls within the purposes specified in the agreement of December 30, 1911, and is promotive of public convenience is warranted by the facts.   It has been repeatedly held that in the absence of any fraud or collusion or palpable error — and there is no such charge made here, nor any such suggestion — the determination of the Transit Construction Commissioner is final and conclusive upon the comptroller.

It is thus evident that, upon the undisputed facts, the duty of the comptroller to issue the warrants in question is purely ministerial, and that under the statute he cannot exercise any discretion as to whether he will issue the warrant or not. (*Ross* v. *Curtiss*, 31 N. Y. 606; *People ex rel. Rodgers* v. *Coler*, 56 App. Div. 98; affd., 166 N. Y. 1.)   He can exercise no power of review over the acts of the Public Service Commission or the Transit Construction Commissioner or the board of estimate and apportionment.   He has pointed out nothing which would indicate that the settlement of award was unfairly or illegally reached, or that the petitioner has omitted to observe any of the provisions of law necessary to entitle it to the warrant of the comptroller.

Subdivision 1 of section 37 of the Rapid Transit Act (Laws

of 1891, chap. 4, added by Laws of 1894, chap. 752, as amd. by Laws of 1909, chap. 498; Laws of 1911, chap. 888; Laws of 1913, chap. 540, and Laws of 1915, chap. 544; since amd. by Laws of 1921, chap. 608),* which deals with the matter of providing funds for the construction of rapid transit railroads, ·reads so far as pertinent to this discussion as follows: " For the purpose of providing the necessary means for such construction * * * the board of estimate and apportionment, or other local authority in said city, in which such road or roads are to be constructed, having power to make appropriations of moneys to be raised by taxation therein, from time to time, and as the same shall be necessary, and upon the requisition of said Public Service Commission, shall direct the comptroller or other chief financial officer of said city, and it shall thereupon become his duty, to issue the bonds of said city. * * * They shall not be sold for less than the par value thereof, and the proceeds of the same shall be paid out and expended for the purposes for which the same are issued, upon vouchers certified by said Public Service Commission."

The agreement of December 30, 1911, provides: " The Comptroller of the City shall make such payment or payments upon a voucher or vouchers as aforesaid, accompanied by a requisition of the Construction Company and Interborough Company for the said sum or a part thereof corresponding with the amount stated in the voucher, which shall show that the sum for which requisition is made will be employed for one of the uses aforesaid, and which shall have annexed to it the written approval of the Commission."

The order denying the writ of mandamus prayed for is reversed, with ten dollars costs and disbursements, and the motion for the writ is granted, with fifty dollars costs.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with fifty dollars costs.

---

* See, also, Laws of 1919, chap. 520, adding to Public Service Commissions Law, article 5-A; Laws of 1921, chap. 134, adding to Public Service Commission Law, art. 6; Laws of 1921 chap. 134 §§ 68–79.— [REP.