In the Matter of the Application of The Rector, Churchwardens and Vestrymen of Trinity Church in the City of New York, Respondents, for an Order of Peremptory Mandamus against Charles W. Berry, Comptroller of the City of New York, and Another, Appellants.*

*Municipal corporations — New York city — mandamus — peremptory order to review controversy between board of transportation and comptroller — Rapid Transit Act, § 10, and Greater New York Charter, § 149, construed — extent of comptroller's " audit " — subways — reasonableness of payments for real estate purchases.*

Appeal from a peremptory mandamus order of the Supreme Court, entered in the New York county clerk's office on February 29, 1928, granting petitioner's motion for an order of peremptory mandamus.

Order affirmed, with ten dollars costs and disbursements. No opinion. Present — Dowling, P. J., Merrell, Finch, McAvoy and Proskauer, JJ.; Dowling, P. J., and Finch, J., dissent.

Finch, J. (dissenting). This is a controversy between a semi-independent board, to wit, the board of transportation, and the city of New York over the reasonableness of certain payments sought by said board. For the court to deny the comptroller the right to contest the reasonableness of the payments required by the board of transportation for purchases of real property and to hold as a matter of law that the comptroller must pay upon demand without a hearing, violates fundamental statutory safeguards, namely, in so far as applicable to the case at bar, a hearing or an audit, through which the Legislature has sought to protect the treasury of the city of New York. In the first place, where there is a disagreement between the city and a semi-independent board such as the board of transportation, the city is furnished with an opportunity to be heard upon the merits of the controversy. For instance, section 10 of the Rapid Transit

* Affd., 248 N. Y. 564.

Act* provides that the board of estimate and apportionment shall, from time to time, on requisition duly made by the Public Service Commission (a predecessor board to the board of transportation),† " appropriate such sum or sums of money as may be requisite and necessary  *  *  *. In case the said board of estimate and apportionment  *  *  * fail to appropriate such amount as the Public Service Commission [now Board of Transportation] deem requisite and necessary, the Commission [Board] may apply to the Appellate Division of the Supreme Court *  *  * to determine what amount shall be appropriated for the purposes required by this section, and the decision of said Appellate Division shall be final and conclusive." But even if it should be urged that the board of estimate and apportionment cannot refuse to appropriate funds still this does not do away with the express requirement of the Rapid Transit Act that the comptroller must audit. Section 10 provides for such an audit by the comptroller: " It shall be the duty of the auditor and comptroller of any such city, after such appropriations shall have been duly made, to audit and pay the proper expenditures of said Commission [Board],  *  *  *, which payments shall be made in like manner as payments are now made by the auditor, comptroller, or other public officers, of claims against and demands upon such city." Obviously where a contract has been assented to by the board of estimate and apportionment of the city, then the audit of the comptroller becomes a mere verification of the validity of the contract and that the payments are due in accordance with the terms thereof. (*Matter of Rapid Transit Subway Const. Co.*, 199 App. Div. 45; affd., 233 N. Y. 544.) An exception is also made in the case of the necessary running expenses of the board of transportation. (*Matter of McAneny* v. *Board of Estimate*, 232 N. Y. 377.) The second statutory safeguard thrown about the treasury of the city of New York and which is violated by denying an audit to the comptroller in this case is that section 149 of the charter of the city of New York‡ provides that no claim may be paid by the city without a certificate from the comptroller that the amount is just and reasonable, unless either there has been a judicial hearing, a public letting, or a direct settlement and adjustment by the comptroller. Section 149 provides: " No claim against the city or against any of the counties contained within its territorial limits, or payable in the first instance from moneys in the city treasury for services rendered or work done or materials or supplies furnished except (1) claims reduced to judgment, or (2) awards, costs, charges and expenses duly taxed or ordered paid in judicial proceedings, or (3) claims arising under the provisions of contracts made at public letting in a manner provided by section four hundred and nineteen of this act, or (4) claims settled and adjusted by the comptroller, pursuant to the authority of this section, shall be paid unless an auditor of accounts shall certify that the charges therefor are just and reasonable." As already noted, the Rapid Transit Act places an obligation upon the comptroller to audit and pay the expenses of said Commission [Board] in like manner as payments are now made by the comptroller of *claims against and demands upon such city*. The applicability,

---

* Laws of 1891, chap. 4, § 10, as amd. by Laws of 1912, chap. 226.— [REP.

† See Pub. Serv. Comm. Law, §§ 130, 134, 138, as added by Laws of 1924, chap. 573.— [REP.

‡ See Greater New York Charter (Laws of 1901, chap. 466), § 149, as amd. by Laws of 1923, chap. 667.— [REP.

therefore, of section 149 of the charter to the case at bar is plain. Petitioner claims that the provisions of section 149 of the charter do not apply to the board of transportation because of the following provisions: " The assent of the comptroller shall be necessary to all agreements hereafter entered into by any city officer, board, commission or department for the acquisition by purchase of any real estate or easement therein, when such an agreement involves an obligation to pay or an expenditure of any ·money on behalf of the city, * * * but nothing hereinbefore contained shall affect the board of rapid transit railroad commissioners [now board of transportation]* existing under chapter four of the laws of eighteen hundred and ninety-one as amended." An answer to the claim of the petitioner in this regard is that section 10 of this special act, under which the board of transportation derives its very existence, provides that the city of New York, through the comptroller, shall have the right of audit, which at the least comprises the right of a hearing in the event that he objects. This is a necessary safeguard upon the right of the board of transportation to decide upon the properties which shall be the subject of purchase. In view of these statutory requirements the contract must be held to be made subject to the right of the comptroller to object upon the ground that the amount paid is excessive. For the purposes of this decision it may be assumed that it is within the power of the Legislature to compel a municipality of the State to make payments, as in the case at bar, for the real property purchased upon the sole direction of the board of transportation (*Matter of McAneny* v. *Board of Estimate*, 232 N. Y. 377, 386, 387), but this the Legislature has not done. On the contrary, it has thrown about such payments the statutory safeguards hereinbefore enumerated. `An analogous case supports this conclusion. (*Matter of Brady & Co.* v. *Berry*, 219 App. Div. 703; affd., 245 N. Y. 506.) There the court house board, being a semi-independent board as in the case at bar, entered into a supplemental contract and the comptroller of the city insisted upon the same right of audit as in the case at bar. Such right was sustained at Special Term and affirmed both in this court and in the Court of Appeals. Moreover, the language imposing the duty upon the comptroller in the Court House Act † did not expressly cast upon the comptroller the duty of audit, as is expressly done in the Rapid Transit Act, but the language was to pay as like claims against the city of New York were paid and it was held that the comptroller was required to audit. So far as laying down the requisite safeguards for payments out of the treasury of the city of New York, I can see no distinction between the court house board letting a contract involving millions of dollars without public letting and the board of transportation buying property for a like amount. If the city of New York through its comptroller cannot audit this amount then the board of transportation has a more unlimited privilege over the city treasury than the city itself. Conceding the fullest power to the board of transportation to make contracts, yet when it comes to payment such contracts ought not to have a higher validity than if made in the first instance by the city of New York. If the city sought to make a contract without public letting or other check provided for by law and then sought payment from the comptroller the latter would have cast upon him the duty of

---

* See Pub. Serv. Comm. Law, §§ 130, 134, 138, as added by Laws of 1924, chap. 573.— [REP.

† See Laws of 1903, chap. 336, § 14, as amd. by Laws of 1910, chap. 556.— [REP.

certifying that the payments were just and reasonable. The payment here does not fall within one of the excepted classes of claims (namely: [1] claims reduced to judgment which implies a judicial hearing; [2] awards, charges, etc., ordered paid in judicial proceedings which likewise implies a judicial hearing; [3] contracts publicly let; and [4] claims settled and adjusted by the comptroller) where the comptroller's certificate is dispensed with. Hence in the case at bar such certificate is required, and if the comptroller object he is entitled to a hearing in lieu thereof. It follows that the order appealed from granting a peremptory writ [order] of mandamus and denying the right of the city of New York, through the comptroller, to be heard as to the reasonableness of the amount, should be reversed and the motion for a peremptory writ [order] of mandamus denied. Dowling, P. J., concurs.